[L. A. No. 7834. In Bank.—February 26, 1924.]

## SAN DIEGO AND ARIZONA RAILWAY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—INJURY IN DISCHARGE OF DUTY—SHOOTING BY FELLOW-EMPLOYEE.—In this proceeding in *certiorari* to annul an award of the Industrial Accident Commission for death of an employee through being shot by a fellow-employee, it is held that the evidence justified the finding of the commission that deceased was injured in the discharge of the duties of his employment.

APPLICATION for a Writ of Certiorari to review an order of the Industrial Accident Commission making an award for death. Award affirmed.

The facts are stated in the opinion of the court.

Read G. Dilworth and V. F. Bennett for Petitioner.

Warren H. Pillsbury for Respondents.

WASTE, J.—Del Rote, while employed by the petitioner here, was shot by a fellow-employee. The respondent Commission found that the injury, which resulted in Rote's death, occurred in the course of and arose out of his employment. It also found that the employee left surviving him, and wholly dependent, his wife, Mary Rote, to whom it awarded a death benefit in the sum of four thousand nine hundred dollars, together with the usual allowance of one hundred dollars for funeral expenses. This is a proceeding to annul the award.

It is the contention of the petitioner that Rote was not acting in the course of his employment at the time he was shot, and, further, that even should it be found that the decedent may have been so acting at the time, the shooting

Injury from assault as arising out of and in the course of employment within the meaning of the Workmen's Compensation Acts, notes, Ann. Cas. 1918B, 787, 794, 803, 804; 15 A. L. R. 589; 21 A. L. R. 758; L. R. A. 1918E, 498.

which caused his death did not arise out of his employment in any capacity.

The record is very voluminous, but the salient facts are as follows:

On April 23, 1922, Rote was employed by the San Diego and Arizona Railway Company as trainmaster and also as road foreman of engines. In such capacity he was in charge of the operation of all trains as soon as they were made up, and seems to have been charged somewhat with oversight of the equipment furnished. C. B. Trott was, at the same time, employed by the petitioner as night foreman at its roundhouse. Trott was not officially under Rote's jurisdiction, but in the course of the latter's employment it was frequently necessary for him to be informed about matters at the roundhouse. The railway is not a large one and the lines of authority over different departments do not appear to have been always recognized. For some time Trott had been in the habit of blowing the roundhouse whistle to call his men when he wanted them. Complaint was made by near-by residents about the noise thus made and on the night before the shooting Rote went to the roundhouse and inquired for Trott, who was absent. His purpose was to inquire why the whistle was blown to call the men. He left directions with another employee at the roundhouse to tell Trott to discontinue the practice of blowing the whistle during the night, and reported what he had done to Mr. Lowe, superintendent and chief engineer of the petitioner. Trott, the roundhouse foreman, was angered by the message he received from his fellow-employee.

The following night it was necessary to make up a train which should leave the depot at 10 o'clock. This train was usually a mixed freight and passenger train, in which case it was impossible to heat the train from the locomotive. On the night in question there were no freight-cars and it was desirable to have an engine employed which had a steam-heating device. The making up of this train was part of Rote's duties. Just what actually occurred that night rests largely in the credence to be given to the testimony of various witnesses, and on the justifiable inferences and conclusions to be drawn from their testimony. It appears that the engine furnished by Trott, the roundhouse

foreman, did not have the required heating device. Rote undertook to ascertain why the engine he wanted was not furnished. There were telephone conversations between Rote and Superintendent Lowe, and between Rote and the roundhouse foreman, Trott. Shortly after the train left the station Rote, accompanied by his wife, went in an automobile to the roundhouse. It is the contention of petitioner that as soon as Rote got there he began using abusive language to Trott, at the same time advancing in a threatening manner. The fact is that immediately after Rote entered the office of the roundhouse foreman a shot was fired and Rote ran from the office pursued by Trott. Two more shots were fired, one striking Rote in the back. He was picked up by an automobile and taken to the police station, then to a hospital, where he died two days later. Trott was arrested and charged with murder. At the trial he testified that he did not intend to shoot Rote, but that his pistol became jammed while he was running and that in striking his pistol to relieve the jam it was discharged twice, and that unfortunately Rote happened to be in the line of fire.

[1]   We have given but a mere synopsis of the testimony and feel that it is unnecessary to go further into a narration of the events leading up to and immediately preceding the shooting. From all the facts and circumstances surrounding the fatal shooting affray, we are convinced that the Industrial Accident Commission was justified in concluding that the assault upon Rote occurred in the course of and actually arose. out of his employment. The shooting took place while Rote was actually performing a duty in the course of his employer's business at the roundhouse. It arose out of the employment and was incident thereto, in that the assault grew out of circumstances occurring in the course of his work and not out of any prior or personal quarrel. Giving full weight to the contention of petitioner that Trott, the roundhouse foreman, was angered by the visit and message of Rote that Trott cease blowing the roundhouse whistle at night, and that bad feeling resulted between Trott and the decedent therefrom, we are unable to accept petitioner's point of view that the injury can be considered only as one arising out of a prior and personal quarrel. From the beginning of the incidents which led

up to the killing, the relations between the two men actually arose out of the work of the two employees in the service of the petitioner. Although the giving of any such directions was denied by the superintendent, there is evidence, which no doubt had compelling weight with the Commission, tending to establish the fact that Rote went to the roundhouse on the evening he was killed on the direct order of Lowe, for the purpose of ascertaining why the desired equipment had not been furnished for the night train.

The petitioner attempts to bring the injuries received by Rote within the line of authorities known as the "horseplay" cases, such as, for instance, *Coronado Beach Co.* v. *Pillsbury*, 172 Cal. 682 [L. R. A. 1916F, 1164, 158 Pac. 212]. But this is not such a case. The injury here was one arising out of and in the course of Rote's employment within the meaning of the Workmen's Compensation Act (*Western Indemnity Co.* v. *Pillsbury*, 170 Cal. 686, 706 [151 Pac. 398]), and can fairly be traced as an incident of such employment. (*Warren Construction Co.* v. *Industrial Acc. Com.*, 64 Cal. App. 260 [221 Pac. 381].)

The evidence in this case justifies the finding and conclusion of the respondent that Rote was injured in an altercation which grew out of the proper discharge of his employment. It will serve no useful purpose to critically analyze the authorities cited from other jurisdictions or to elaborate the discussion on this point. As was said in *Western Indemnity Co.* v. *Pillsbury, supra:* "In its last analysis the petitioner's argument rests upon a supposed state of facts which was not established to the satisfaction of the commission, and which was not shown by evidence free from conflict."

The award is affirmed.

Myers, J., Richards, J., Lawlor, J., Seawell, J., and Lennon, J., concurred.