19 Cal.2d 622 (1942)
PACIFIC EMPLOYERS INSURANCE COMPANY (a Corporation), Petitioner,
v.
INDUSTRIAL ACCIDENT COMMISSION and W. ALLEN EHRHARDT, Respondents.
L. A. No. 18068. 
Supreme Court of California. In Bank. 
Feb. 27, 1942.
 W. N. Mullen for Petitioner.
 Everett A. Corten for Respondents.
 CARTER, J.
 Petitioner, the insurance carrier for the employer, Alexander-Balart Company, seeks to have annulled an award of the respondent Industrial Accident Commission *624 to the employee, respondent Ehrhardt, for disability caused by the disease coccidioidal granuloma, commonly known as San Joaquin Valley fever.
 The employer's place of business is in San Francisco. It is engaged in the business of selling coffee. Ehrhardt has been employed by it since July 15, 1932, for the most part as a traveling salesman engaged in selling the employer's products in California, Arizona, New Mexico and Texas. Prior to his employment by Alexander-Balart Company, Ehrhardt had never been in Arizona, New Mexico, Texas, or the San Joaquin Valley in California, except that possibly he passed through the latter place when he was about three years of age. His duties as salesman required him to cover the specified territory by train and automobile. During the time here in question, Ehrhardt lived in San Francisco, except the year 1929, during which he resided in Alameda County. He at all times worked out of the San Francisco office of his employer.
 According to his testimony, he made the following trips to the places above-mentioned in the course of his employment. His first tour in April of 1933 lasted about two weeks. He traveled from San Francisco to Arizona by train and thence canvassed Arizona in an automobile over dusty roads. He did not return to San Francisco via the San Joaquin Valley. In May, 1933, he drove into that valley in an automobile, and after spending two days there, proceeded to Arizona where he toured that state and New Mexico, encountering a dust storm while there; the trip consumed about two and a half weeks. In August of 1933, he made two visits to the San Joaquin Valley of a duration of about two weeks; he canvassed said valley in an automobile on those occasions. His next visit there was from September 5th to September 23, 1933, during which time he covered Arizona by automobile, having passed through the San Joaquin Valley en route. In the early part of February, 1934, he spent about two weeks soliciting orders in said valley. He suffered from a bad cold and cough sometime in February or March of that year. A few days prior to April 2, 1934, he commenced to find blood in his sputum, and consulted Dr. Hutchins on that date. The doctor believed the cause to be a nose or throat condition and last saw Ehrhardt on April 9, 1934. Thereafter, the coughing and discharge of blood occurred sporadically, but finally while suffering from a more extended attack he consulted Dr. Duggan in July, 1939, who referred him to Dr. Shipman, *625 a specialist in lung diseases. Dr. Shipman's diagnosis was tubercular infection in the apex of his right lung, and in treatment therefor a pneumothorax was induced and the lung kept compressed. Failing to find any tuberculosis bacilli in his sputum upon repeated tests, Dr. Shipman finally had a more extensive analysis of the sputum made, which revealed in January, 1940, the presence of coccidioides infection. A second laboratory test revealed the same, and a third one in March gave Dr. Shipman undeniable proof of the presence of coccidioides infection or San Joaquin Valley fever. That was the first diagnosis or discovery that Ehrhardt had such a disease. Ehrhardt made several trips to San Joaquin Valley and Arizona on his employer's business after the one in February, 1934. He never traveled about in that valley or Arizona except in the course of his employment.
 It appears that the cause of coccidioidal granuloma is a mold or fungus which exists in the soil in San Joaquin Valley and Arizona, and that a person may become infected therewith through the respiratory tract by inhaling the mold which is blown about in the dust. The manifestations of the disease are quite similar to tuberculosis. Ordinarily the symptoms at the onset are practically the same as an ordinary cold. The secondary stage of the disease is coccidioidal granuloma. In most instances the disease does not progress beyond the primary stage. The incubation period is one to three weeks. Dr. Shipman testified that the disease is not contracted in San Francisco or the area to the east or north thereof or the upper Sacramento Valley, that the disease is contracted primarily in the San Joaquin Valley and Arizona, and that Ehrhardt probably contracted the disease when he first began to spit blood. He was asked: "Then, Doctor, on the basis of this information it is, as I understand it, your opinion that the disease in this particular instance was contracted by Mr. Ehrhardt in the San Joaquin Valley or Arizona? A. Yes." He was also asked in connection with the cases of the disease reported in the bulletin of the Department of Public Health of California: "I say--well, let's finish the question--the great majority of these cases, Doctor, show residence in the San Joaquin County area and with that in mind, can it be said that the disease is a disease particularly virulent in that area, in that the likelihood of a person getting it is much greater in that area than elsewhere in the State? A. I think so." Dr. Shipman states in his written report on Ehrhardt's *626 case: "In April of 1934, he (Ehrhardt) showed the first evidence of this disease. It would seem a reasonable conclusion under the facts, regardless of the exact incubation time of the disease, that it is a practical certainty that he acquired it in the San Joaquin Valley and Arizona between April of 1933 and April of 1934. The reasons for this are that 77% of the people constantly resident in the valley get the disease. In areas outside the valley cases of the disease are an extreme rarity and in such cases it is usually felt that through some unknown factor of special contact these cases arise by reason of transportation of spores from the endemic area. Where the patient has been in the endemic area to the extent shown for a year prior to breaking down and has not previously been in the area at all, except possibly over twenty years previously, the probabilities are overwhelming that he contracted the disease in these areas during the year before it first made its appearance. In fact it would seem to be a practical certainty. ... In summary it would appear that there is only the most remote possibility that the patient here got the disease anywhere but on his business trips during 1933 and 1934 in the endemic area; that the great probability and practical certainty is that he got it on these trips." (Emphasis added.) The evidence also shows that residents of San Joaquin Valley attain a degree of immunity to the disease and are less susceptible to the contraction of it than persons coming into the valley for the first time.
 [1a] Petitioner's main contention is that the evidence is insufficient to support the award; that there is no showing that Ehrhardt contracted the disease in the course of his employment; and that even if he did contract it in San Joaquin Valley or Arizona while performing services for his employer, it cannot be said to have arisen out of his employment or have been incidental to it, or the proximate result thereof.
 We have carefully examined the record and cannot agree with those contentions. The Industrial Accident Commission found that Ehrhardt contracted the disease while in San Joaquin Valley on the business of his employer during the period between April, 1933, to April, 1934. The evidence supports that finding. When we consider the evidence that the disease is endemic in San Joaquin Valley, that the spores causing it are found in the soil there, that it is acquired by an inhalation of those spores which are borne on the wind, that Ehrhardt contracted the disease, that he had not been in *627 San Joaquin Valley except in the course of his employment, that Dr. Shipman testified that in his opinion the disease was contracted there by Ehrhardt and that Dr. Pearson stated that the probabilities were one hundred to one that he contracted it there, it cannot be said that the trier of fact, the commission, was not justified in its conclusion. Petitioner points to evidence by its medical witnesses contradictory to the above, and to the effect that the disease possibly could be contracted in Alameda County, and the areas north and east of San Francisco, that cattle in those areas have been found infected, that the infection may be carried in clothes and on other articles, and the like, but that merely created a conflict in the evidence which the commission has resolved against the petitioner. It is not the function of this court to weigh conflicts in the evidence. It appears that the incidence of the disease in places other than San Joaquin Valley were sporadic, and the possibility was remote that Ehrhardt received the infection elsewhere. It should be remembered that in cases of this character medical evidence is to be given the weight to which it is entitled and proof that the disease was contracted in the course of the employment need not attain absolute certainty or exact demonstration to be sufficient. In San Francisco v. Industrial Acc. Com., 183 Cal. 273 [191 P. 26], this court said at page 283:
 "It, of course, cannot be said that from these facts it is certain that Slattery contracted his sickness because of his employment. But certainty is not required. It is not even required that the award be in our judgment in accord with the preponderance of the evidence, in order that we be not at liberty to annul it. We cannot disturb the award unless we can say that a reasonable man could not reach the conclusion which the commission did. This we cannot say in the present case." (See, also: State Compensation Ins. Fund v. Industrial Acc. Com., 195 Cal. 174 [231 P. 996]; Royal Indemnity Co. v. Industrial Acc. Com., 70 Cal.App. 435 [233 P. 381]; United Dredging Co. v. Industrial Acc. Com., 92 Cal.App. 110 [267 P. 763]; Hartford A. & I. Co. v. Industrial Acc. Com., 32 Cal.App. 481 [163 P. 225]; Santa v. Industrial Acc. Com., 175 Cal. 235 [165 P. 689].)
 Petitioner relies upon such cases as Children's Hosp. Soc. v. Industrial Acc. Com., 22 Cal.App.2d 365 [71 PaCal.2d 83]; and Pattiani v. Industrial Acc. Com., 199 Cal. 596 [250 P. 864, 49 A.L.R. 446], but each case is necessarily dependent *628 upon its particular facts. In the Children's Hospital case it does not appear from a reading thereof that there was any medical testimony that the disease, poliomyelitis, was contracted by the nurse while she was on duty at the hospital, her place of employment, nor was there any substantial evidence that she was exposed to the infection there. In the case at bar there is testimony that in the doctor's opinion Ehrhardt contracted the disease while in the endemic area on his employer's business. Also there is evidence that the mold causing the disease is in that area and that 77% of the inhabitants thereof suffer at least a primary infection. In the Pattiani case the finding of the commission was adverse to the applicant, and it was held that the evidence sustained its findings. It does not appear whether there was any medical evidence that the disease, typhoid fever, was contracted by the applicant while in New York City, there being an epidemic in that city at the time.
 [2] It is, of course, a fundamental principle that the disease must be contracted in the course of the employment, and the burden of proof thereof rests upon the applicant. Nevertheless, it must be remembered that in reviewing awards of the commission, that question is one of fact for the commission, and all reasonable inferences available are to be drawn in favor of the award.
 Petitioner argues, however, that even if it be assumed that the evidence established that Ehrhardt contracted the disease in the course of his employment, the application of the doctrine that an injury to be compensable must be in excess of and different from that to which the commonalty is subjected, requires an annullment of the award. [3] It is unquestionably the law that an injury to be compensable under the Workmen's Compensation laws must arise out of the employment, that is, occur by reason of a risk or condition incident to the employment. There must be at least a causal connection between the employment and the injury; the mere fact alone that the injury occurred while the employee was in his master's service is not sufficient. (Newton v. Industrial Acc. Com., 204 Cal. 185 [267 P. 542, 60 A.L.R. 1279]; Larson v. Industrial Acc. Com., 193 Cal. 406 [224 P. 744]; San Francisco v. Industrial Acc. Com., supra.) [4] However, there are other principles to be observed in aid of the application of the foregoing rules to the instant case. It is trite, but pertinent, to observe that the issue of whether the injury *629 suffered arose out of a risk incident to the employment is a question of fact in each case and if there is any evidence or reasonable inferences flowing therefrom which support the finding of the commission, the award will not be disturbed on review. Each case must be decided upon its particular facts and no comprehensive formula is available. (Larson v. Industrial Acc. Com., supra.) [5] The opinions of qualified medical witnesses with reference to the origin and cause of the injury are valid evidence which will support an award. (Newton v. Industrial Acc. Com., supra; State Compensation Ins. Fund v. Industrial Acc. Com., supra.) [6] The injuries suffered to be compensable need not be of the kind anticipated by the employer or peculiar to the employment. (Larson v. Industrial Acc. Com., supra.) [1b] In the instant case we have the opinion of medical witnesses that Ehrhardt contracted the disease in the San Joaquin Valley while there in the service of his employer, and that the probability of his having contracted the disease elsewhere is very remote. As stated in San Francisco v. Industrial Acc. Com., 183 Cal. 273, 283 [191 P. 26]:
 "Its [the Commission] conclusion is the more justified by the fact that it coincides with the conclusions of most of the physicians who testified. Their opinions upon a point of this character are entitled to consideration, since it is a part of their vocation to observe diseases and how they spread, and to draw conclusions from their observations." (Emphasis added.) And in addition to that evidence are the circumstances that, in the other localities visited by Ehrhardt while not serving his employer during the time here pertinent, the cases of the infection are sporadic and the possibility that he contracted the disease in such places is remote, that approximately 77% of the inhabitants of the San Joaquin Valley area are infected with the disease at some time during the course of their lives although only a few of them develop the secondary phase, coccidioidal granuloma, and that by reason of the prevalence of the infection among those inhabitants they attain an immunity which a person coming into that area for the first time does not possess. [7] Circumstantial evidence is sufficient to support an award of the commission, and it may be based upon the reasonable inferences that arise from the reasonable probabilities flowing from the evidence; neither absolute certainty nor demonstration is required. (State Compensation Ins. Fund v. Industrial Acc. Com., *630 supra; Royal Indemnity Co. v. Industrial Acc. Com., supra; United Dredging Co. v. Industrial Acc. Com., supra; Hartford A. & I. Co. v. Industrial Acc. Com., supra; San Francisco v. Industrial Acc. Com., supra; Santa v. Industrial Acc. Com., supra.) [1c] It is reasonable to conclude that if Ehrhardt's duties had not taken him to the endemic area he would not have contracted the disease. It was by reason of and incident to his employment that he came in contact with the infection. The risk to which he was subjected by his employment was not the same as that of the public in the endemic area inasmuch as the great majority of the inhabitants there possessed an immunity to the disease which Ehrhardt, living outside the area, lacked.
 [8] There is no substantial distinction with reference to the risk being incident to his employment and the hazards of traffic and travel encountered by an employee whose duties take him onto the streets and highways. The latter hazards are no more closely related to the employment of such an employee as differentiated from the general public, than was the hazard of infection which was met by Ehrhardt in his employment which required his presence in the endemic area. It is the firmly established law that when employees whose duties compel them to travel or to use the streets and highways suffer injuries in the course thereof, the injury arises out of and occurs in the course of employment and is compensable. (California Casualty Indemnity Exchange v. Industrial Acc. Com., 5 Cal.2d 185 [53 PaCal.2d 758]; Burton Auto Transfer Co. v. Industrial Acc. Com., 37 Cal.App. 657 [174 P. 72]; Globe Indemnity Co. v. Industrial Acc. Com., 36 Cal.App. 280 [171 P. 1088]; Western Pacific R. R. Co. v. Industrial Acc. Com., 193 Cal. 413 [224 P. 754]; London etc. Co. v. Industrial Acc. Com., 35 Cal.App. 681 [170 P. 1074]; Maryland Casualty Co. v. Industrial Acc. Com., 39 Cal.App. 229 [178 P. 542]; Real Silk Hosiery Mills v. Industrial Acc. Com., 86 Cal.App. 189 [260 P. 807].) In the case at bar Ehrhardt's employment compelled him to travel over the streets and highways both in cities and in the country in an automobile. The weather being warm he would naturally have and did have the windows of his vehicle open. The spores or mold causing the infection is in the soil in the endemic area, and any breeze would naturally carry the mold to him where it would be inhaled. The case of Roe v. Boise Grocery Co., 53 Idaho 82 [21 PaCal.2d 910], is *631 worthy of note. There the employee, a traveling salesman, in the course of his employment was required to travel over the highways through territory infested with wood ticks infected with the virus which causes Rocky Mountain spotted fever. He was bitten by a wood tick, which resulted in his death from infection with the fever. The Supreme Court of Idaho affirmed an award of compensation of the Industrial Accident Board, and held that the injury arose out of the employment. In answer to the contention that the risk of such infection from wood ticks was no greater than that incurred by the commonalty, the court said at page 912:
 "The duties of the deceased required him to make frequent regular trips over the highways, stop at the hotels and visit his customers both to sell and collect; thus the highways he traveled, the hotels he stopped at, and the stores he visited became and were his workshop; they were the places where he constantly spent his time and worked for his employer. That cannot be said of any member of the public not performing similar duties nor similarly employed. Consequently, the deceased was exposed to the danger of being bitten by an infected wood tick in a greater degree than those who lived in the wood tick territory and traveled over the highways traversing it. We think that the rule applied to the servant who, in the course of the master's business, passes along a public street, and sustains an accident by reason of the risks incidental to the streets, should also be applied to a salesman traveling by automobile over the public highways, who sustains an accident by reason of the risks incidental to the highways." In Fidelity & Casualty Co. v. Industrial Acc. Com., 84 Cal.App. 506 [258 P. 698], the employee contracted typhoid fever while in a foreign country in the course of his employment. Although the court based its holding that the injury was compensable chiefly upon the ground that the employer knew of the presence of the disease in that country, it remarked at page 510:
 "Furthermore, the evidence sufficiently shows that the inhabitants of these localities, while not immune from the disease, were less subject to infection therefrom than foreigners, and we are unable to say that the conclusion of the Commission that the employee was subjected to an exposure in excess of that of the commonalty was not reasonably supported."
 Petitioner cites Pattiani v. Industrial Acc. Com., supra, as controlling. There the employee was sent on his employer's *632 business to New York City where he contracted typhoid fever. An epidemic of the fever then existed in the city. The commission found against the employee, and that the epidemic was not caused by contaminated oysters (the employee had eaten contaminated oysters while in the city), and that there was no risk different than that to which the general public was exposed. This court was there concerned merely with whether the injury was compensable in view of the finding of the commission. It pointed out that there was no evidence of his having contracted the disease by reason of the epidemic and that the evidence supported the finding. In the case at bar the medical testimony shows that Ehrhardt contracted the disease in the course of his employment, and that he, a stranger coming into the endemic area was more susceptible to the disease than the residents thereof. Likewise, in Childrens Hosp. Soc. v. Industrial Acc. Com., supra, there was no evidence that the employee, a nurse in a hospital, was in a place where she was exposed to the disease, nor was there any medical evidence that she contracted the disease at the hospital. On the contrary the medical evidence was to the effect that nothing was known about the disease or who were carriers thereof and could transmit it to another. In London Guarantee & Accident Co., Ltd. v. Industrial Acc. Com., 202 Cal. 239 [259 P. 1096, 54 A.L.R. 1392], the employee was not, by reason of his employment, taken away from his place of residence into an area where he was exposed to a special risk.
 [9] The findings of the referee in the first instance were against Ehrhardt. The latter petitioned for and was granted a rehearing and the order granting the same also made findings favorable to Ehrhardt and made the award here attacked; no new evidence was taken on rehearing. The order recited: "GOOD CAUSE APPEARING THEREFOR: It Is Ordered that the applicant's petition for rehearing, filed herein January 27, 1941, be and the same is hereby granted."
 "It appearing to the satisfaction of this Commission that no sufficient reason exists for taking further evidence,"
 "IT IS ORDERED that the instant matter be forthwith submitted for re- consideration and re-determination and that the Findings and Award of January 8, 1941, be rescinded and annulled and the following Findings and Award be substituted as Decision on Rehearing:". Petitioner alleges in its petition for a writ of review:
 "That there was no finding in said order granting rehearing *633 and decision on rehearing and it is denied that the members of the Commission at any time read the transcripts and record of this case before reversing the decision of W. Lee DeMara."
 Petitioner contends that the order of the commission on rehearing was in excess of its jurisdiction claiming that the commission did not review the evidence in the record, citing Taylor v. Industrial Acc. Com., 38 Cal.App.2d 75 [100 PaCal.2d 511], and Bethlehem Steel Co. v. Industrial Acc. Com., 42 Cal.App.2d 192 [108 PaCal.2d 698]. Whatever may be the rule with respect to the necessity of a review of the record and a consideration of all the facts by the commission where a rehearing is granted by it and contrary findings are made, we have nothing more than petitioner's bare assertion that the commission did not review the record and consider all the facts. Under those circumstances it is our opinion that the disputable presumption that official duty has been regularly performed is controlling. (Code Civ. Proc., sec. 1963 (15).) It will be presumed that the commission did review the record and consider all the facts before making its findings and award.
 The award is affirmed.
 Gibson, C.J., Shenk, J., Curtis, J., Houser, J., and Traynor, J., concurred.