[S. F. No. 17110.   In Bank.   Apr. 24, 1945.]

PACIFIC EMPLOYERS INSURANCE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and LILLIAN CARMEL, Respondents.

James C. McDermott and W. N. Mullen for Petitioner.

Everett A. Corten and R. C. McKellips for Respondents.

EDMONDS, J.—Lillian Carmel, while employed in a hotel as a bus girl and attending to her duties, sustained injury as the result of the skylarking of two fellow employees.  By this proceeding, Pacific Employers Insurance Company, the hotel's insurance carrier, seeks to annul an award of compensation for the injury, and the question for decision concerns the liability of an employer under such circumstances.

The facts are undisputed.  Burton and Orgain, two young bus boys, were working in a dining room of the hotel clearing dishes which had been left by departing guests.  It was after 1 a. m. and the boys were throwing hard, round rolls at each other.  They had not quarreled, there was no animosity existing between them, and the roll throwing was simply "skylarking."  It is not known who threw the first roll, but one which Burton aimed at Orgain missed him and, continuing in

its flight, struck Miss Carmel in the right eye. She, with another girl, was then working in a recessed portion of the room at a place where they were not visible to Burton. Neither girl knew what the boys were doing, and at the time of the accident, Miss Carmel did not know what object had struck her nor the source from which it came. The night manager, in charge of all departments of the hotel at the time, testified that horseplay during working hours was in violation of the rules and would be stopped immediately by him or anyone in authority.

As grounds for annulling the award, the insurer contends that, although the applicant's injury occurred in the course of her employment, it did not arise "out of" her employment and, accordingly, is not a compensable injury within the jurisdiction of the Industrial Accident Commission. In support of its position, the petitioner relies upon the rule declared in *Coronado Beach Co.* v. *Pillsbury*, 172 Cal. 682 [158 P. 212, L.R.A. 1916F 1164], and later cases which have followed and applied the rule there stated concerning the liability of an employer for injury caused by horseplay (*Fishering* v. *Pillsbury*, 172 Cal. 690 [158 P. 215] ; *Federal Mut. Liability Ins. Co.* v. *Industrial Acc. Com.*, 187 Cal. 284 [201 P. 920] ; *Great Western Power Co.* v. *Industrial Acc. Com.*, 187 Cal. 295 [201 P. 931] ; *Pacific Emp. Ins. Co.* v. *Division of Ind. Acc. & Safety*, 209 Cal. 656 [289 P. 619] ; *Dalsheim* v. *Industrial Acc. Com.*, 215 Cal. 107 [8 P.2d 840]). The commission urges that the doctrine of *stare decisis* does not call for a perpetuation of the errors of past decisions. It declares that a "frank reappraisal of the law," particularly in view of the changes in the concepts regarding workmen's compensation since 1916, compels the conclusion that the holding in the case of *Coronado Beach Co.* v. *Pillsbury, supra,* should no longer be followed.

The legislation authorizing workmen's compensation is now a part of the Labor Code, which in section 3600 provides as follows: "Liability for the compensation provided by this division . . . shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment, . . . in those cases where the following conditions of compensation concur: . . . (b) Where, at the time of the injury, the employee is

performing service growing out of and incidental to his employment and is acting within the course of his employment. (c) Where the injury is proximately caused by the employment, either with or without negligence.'' The requirement, that the injury to be compensable must occur in the course of *and* arise out of the employment, is clear and unmistakable. Admittedly, Lillian Carmel was ''acting within the course of'' her employment at the time of injury, and the evidence supports the commission's conclusion that she was ''performing service growing out of and incidental to'' her employment. But the insurer argues that the injury was not one ''arising out of'' such employment nor ''proximately caused by the employment'' within the meaning of the Labor Code.

Article XX, section 21, of the California Constitution, as amended in 1918, provides: ''The legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen's compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workmen for injury or disability . . . sustained by the said workmen in the course of their employment, irrespective of the fault of any party.''

The Legislature has declared that in the determination of controversies arising under the statutes governing workmen's compensation, their provisions ''shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment'' (Lab. Code, § 3202). This section, enacted in 1937, is substantially the same as the 1917 act (Stats. 1917, ch. 586, p. 831). Likewise, based upon the earlier law is the section by which the Legislature has declared its purpose, in accordance with the constitutional authorization, ''to make effective and apply a complete system of workmen's compensation'' (Lab. Code, § 3201).

''By the . . . constitutional amendment,'' this court said in *Bartlett Hayward Co.* v. *Industrial Acc. Com.*, 203 Cal. 522 [265 P. 195], ''the legislation of 1917 was given the stamp of approval as the social public policy of the state in its remedial and humanitarian purposes. So . . . the conclusion seems inevitable that it was intended thereby to enlarge and extend

the continuing jurisdiction of the Commission beyond that which had obtained under the act of 1913'' (p. 529). The policy of liberally construing the legislation to compensate employees injured in their employment for the purpose of effecting a complete system of workmen's compensation, has found repeated expression in recent decisions. (*Douglas Aircraft Co.* v. *Industrial Acc. Com.* 24 Cal.2d 340, 341-342 [149 P.2d 702]; *Goodrich* v. *Industrial Acc. Com.,* 22 Cal.2d 604, 609 [140 P.2d 405]; *Tingey* v. *Industrial Acc. Com.,* 22 Cal. 2d 636 [140 P.2d 410]; *California Cas. Ind. Exch.* v. *Industrial Acc. Com.,* 21 Cal.2d 751, 760 [135 P.2d 158]; *California Cas. Ind. Exch.* v. *Industrial Acc. Com.,* 21 Cal.2d 461 [132 P.2d 815]; *Freire* v. *Matson Navigation Co.,* 19 Cal.2d 8, 10 [118 P.2d 809]; *Rideaux* v. *Torgrimson,* 12 Cal.2d 633, 637 [86 P.2d 826].) In the Tingey case, *supra,* the court declared that ''any reasonable doubt as to whether the act of the employee is contemplated by the employment should be resolved in favor of the employee in view of the policy of liberal construction of the workmen's compensation laws'' (p. 641).

Further indication of this court's determination to interpret the Labor Code liberally to the end of insuring a system of compensation completely covering injuries occurring in the course of employment under the conditions fixed by the Legislature, is found in such recent statements as: ''It is not indispensable to recovery, however, that the employee be rendering a service to his employer at the time of the injury. [Citations.] The essential prerequisite to compensation is that danger from which the injury results be one to which he is exposed as an employee in his particular employment'' (*California Cas. Ind. Exch.* v. *Industrial Acc. Com., supra,* pp. 465-466); ''Acts of the employee for his personal comfort and convenience while at work, such as taking a drink of water, lighting a cigarette, warming himself, etc., do not interrupt the continuity of the employment, and this exception is not limited to acts performed on the employer's premises. . . . Where an injury occurs to an employee during his hours of employment on the premises of an employer and the factual situation may give rise to a reasonable inference that the injury arose out of and in the course of the employment, the finding of the commission in this respect will not be disturbed. It is the duty of this court to indulge in all reasonable inferences to support the commission's findings. Any reason-

able doubt as to whether an act is contemplated by the employment and at what particular time or moment an employee resumes his former duties as an employee performing duties for his employer, in view of this state's policy of liberal construction in favor of the employee, should be resolved in favor of the employee" (*California Cas. Ind. Exch.* v. *Industrial Acc. Com., supra,* at pp. 758 and 760) ; although ''an injury to be compensable . . . must arise out of the employment, that is, occur by reason of a risk or condition incident to the employment . . . the injuries suffered to be compensable need not be of the kind anticipated by the employer or peculiar to the employment" (*Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.,* 19 Cal.2d 622, 628-629 [122 P.2d 570, 141 A.L.R. 798]).

In the present case the insurer maintains that although the employee was injured upon the employer's premises during working hours, while performing services growing out of and incidental to her employment, she may not recover for the reason that her injury was caused by frolicking of coemployees in which she did not participate. The petitioner concedes that if skylarking was customary and condoned by the employer (see: *Great Western Power Co.* v. *Industrial Acc. Com.,* 187 Cal. 295 [201 P. 931] ; *Metropolitan Redwood Lbr. Co.* v. *Industrial Acc. Com.,* 41 Cal.App. 131 [182 P. 315), or if, under similar circumstances, Miss Carmel had been injured through an altercation between fellow employees over their work (*Globe Ind. Co.* v. *Industrial Acc. Com.,* 2 Cal.2d 8 [37 P.2d 1039] ; *San Diego & Ariz. Ry. Co.* v. *Industrial Acc. Com.,* 193 Cal. 341 [223 P. 972] ; *Globe Ind. Co.* v. *Industrial Acc. Com.,* 193 Cal. 470 [225 P. 273] ; see, generally: 27 Cal. Jur. 373; 112 A.L.R. 1258), she would be entitled to compensation. These judicial distinctions lack realism. As early as *Kimbol* v. *Industrial Acc. Com.,* 173 Cal. 351 [160 P. 150, Ann.Cas. 1917E 312, L.R.A. 1917B 595], the court said: ''. . . [I]t can make no difference that the danger was not known or anticipated. Nor can it make any difference that the employer was entirely without fault. The liability for compensation created by our law is not founded on any want of care on the part of the employer. . . . Under the old law the employer's exemption from liability where he was not negligent in the matter existed solely because he was not negligent, and not because the injury did not arise out of the employment. Our industrial compensation system has dis-

pensed altogether with the element of negligence on the part of the employer. . . ." (Pp. 355-356.) Certainly, a classification of assaults and altercations as incidental to employment, but placing accidents caused by playfulness and frolicking, in which the injured employee took no part and of which he had no knowledge, in the category of those not "proximately caused by the employment," has no sound basis in law or in fact.

Although the weight of authority supports the view that injuries resulting to the participants in horseplay are not compensable (43 A.L.R. 492; 36 A.L.R. 1469; 13 A.L.R. 540) the courts are quite evenly divided upon the rights of a nonparticipant. Better reasoned and more aware of the realities of employment are those decisions holding that a nonparticipant is entitled to compensation if, at the time of injury, he was attending strictly to his duties. (*West Penn Sand & Gravel Co.* v. *Norton*, 95 F.2d 498; *General Acc. etc. Corp.* v. *Crowell*, 76 F.2d 341; *Pekin Cooperage Co.* v. *Industrial Bd.*, 277 Ill. 53 [115 N.E. 128]; *Chicago etc. Ry. Co.* v. *Clendennin*, 81 Ind.App. 323 [143 N.E. 303]; *Phil Hollenbach Co.* v. *Hollenbach*, 181 Ky. 262 [204 S.W. 152, 13 A.L.R. 524]; *Socha* v. *Cudahy Packing Co.*, 105 Neb. 691 [181 N.W. 706, 13 A.L.R. 513]; *Matter of Leonbruno* v. *Champlain Silk Mills*, 229 N.Y. 470 [128 N.E. 711, 13 A.L.R. 522]; *Chambers* v. *Union Oil Co.*, 199 N.C. 28 [153 S.E. 594]; *Roxana Petro. Corp.* v. *State Ind. Com.*, 134 Okla. 181 [272 P. 847]; *Maryland Refining Co.* v. *Colbaugh*, 110 Okla. 238 [238 P. 831]; *Borden Mills, Inc.* v. *McGaha*, 161 Tenn. 376 [32 S.W.2d 1039]; *Cassell* v. *Fidelity & Guarantee Co.*, 115 Tex. 371 [283 S.W. 127, 46 A.L.R. 1137]; *Badger Furniture Co.* v. *Industrial Com.*, 195 Wis. 134 [217 N.W. 734]; *Newport H. C. Co.* v. *Industrial Com.*, 167 Wis. 630 [167 N.W. 749]; see: *Brown* v. *Vacuum Oil Co.*, 171 La. 707 [132 So. 117]; *Industrial Com.* v. *Weigandt*, 102 Ohio St. 1 [130 N.E. 38].)

Typical of the modern trend are the conclusions of Judge Cardozo in the leading case of *Matter of Leonbruno* v. *Champlain Silk Mills, supra*: "The claimant while engaged in the performance of his duties in the employer's factory was struck by an apple which one of his fellow servants, a boy, was throwing in sport at another, and as a consequence lost the better part of the sight of one eye. He did not participate in the horseplay, and had no knowledge of it till injured. The question is whether the accident was one 'arising out of and in

the course of employment,' within the meaning of the statute.

"That it arose 'in the course of the employment' is unquestioned. That it arose 'out of' employment, we now hold. The claimant's presence in the factory in association with other workers involved exposure to the risk of injury from the careless acts of those about him. . . . Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something to be reasonably expected, was one of the perils of his service. . . . 'For workmen of that age or even maturer years to indulge in a moment's diversion from work to joke with or play a prank upon a fellow workman, is a matter of common knowledge to every one who employs labor.' The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. . . . The risks of injury incurred in the crowded contacts of the factory through the acts of fellow-workmen are not measured by the tendency of such acts to serve the master's business. Many things that have no such tendency are done by workmen every day. The test of liability under the statute is not the master's dereliction. . . . The test of liability is the relation of the service to the injury, of the employment to the risk.''

The Supreme Court of Texas reached the same conclusion in *Cassell* v. *Fidelity & Guarantee Co., supra*: "Considering every employee peculiarly exposed to such pranks from his co-employees as are inspired by nothing more than a well-nigh universal human craving for fun,'' it declared, "we are forced to consider these pranks as a hazard which the employee required to work with others must encounter in the performance of his duties, and hence such pranks constitute a risk reasonably inherent in or incident to the conduct of the employer's business.'' And in the recent case of *Hartford Acc. & Ind. Co.* v. *Cardillo*, 112 F.2d 11, the United States Court of Appeals for the District of Columbia made the following pertinent observations:

"Nor is it necessary . . . that the particular act or event which is the immediate cause of the injury be itself part of any work done for the employer by the claimant or others. . . . The statutory abolition of common law defenses made easy recognition of the accidental character of negligent acts by the claimant and fellow servants. . . . But these extensions required a shift in the emphasis from the particular act and

its tendency to forward the work to its part as a factor in the general working environment. The shift involved recognition that the environment includes associations as well as conditions, and that associations include the faults and derelictions of human beings as well as their virtues and obediences. Men do not discard their personal qualities when they go to work. Into the job they carry their intelligence, skill, habits of care and rectitude. Just as inevitably they take along also their tendencies to carelessness and camaraderie, as well as emotional make-up. In bringing men together, work brings these qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flareup. Work could not go on if men became automatons repressed in every natural expression. 'Old Man River' is a part of loading steamboats. These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment. . . . So long as the claimant is merely the victim, not a participant, it makes little difference whether the fighting is by fellow employees or strangers to the work or what is the immediate occasion for the dispute. The same is true in horseplay. It is sufficient that the work brings the claimant within the range of peril by requiring his presence there when it strikes.''

Although this court has not gone so far as to hold that every injury to an employee attending to his duties and within the course of his employment is compensable, it has, in many cases, upheld the allowance of compensation for injuries arising out of acts not strictly within the scope of the employment: returning from lunch (*Tingey* v. *Industrial Acc. Com.*, 22 Cal.2d 636 [140 P.2d 410]) ; drinking wine because of indisposition (*Elliott* v. *Industrial Acc. Com.*, 21 Cal.2d 281 [131 P.2d 521, 144 A.L.R. 358]); smoking (*Whiting-Mead Com. Co.* v. *Industrial Acc. Com.*, 178 Cal. 505 [173 P. 1105, 5 A.L.R. 1518]) ; going to obtain a slicker to wear in the performance of duty (*Western Pac. Ry. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413, 415 [224 P. 754]) ; going to obtain an overcoat (*Leffert* v. *Industrial Acc. Com.*, 219 Cal. 710 [28 P.2d 911]) ; going into a hallway to obtain fresh air (*F. W. Woolworth Co.* v. *Industrial Acc. Com.*, 17 Cal.2d 634 [111 P.2d 313]) ; going to obtain water for a fellow employee who had fainted (*County of Los Angeles* v. *Industrial Acc. Com.*, 89 Cal.App. 736 [265 P. 362]) ; returning from purchasing

a package of cigarettes for employee's own use (*Western Pipe etc. Co.* v. *Industrial Acc. Com.*, 49 Cal.App.2d 108 [121 P.2d 35]); domestic servant sewing a hem on her dress (*Employer's etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567 [99 P.2d 1089]). And under the so-called "street risks" doctrine, injuries caused by third persons not connected with the employment are held compensable regardless of the fact that others are equally subject to those risks. (*California Cas. Indem. Exch.* v. *Industrial Acc. Com.*, 21 Cal.2d 461, *supra; California Cas. Indem. Exch.* v. *Industrial Acc. Com.*, 5 Cal.2d 185 [53 P.2d 758]; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 19 Cal.2d 622 [122 P.2d 570, 141 A.L.R. 798].)

When the Coronado case was decided in 1916 the constitutional provisions authorizing the enactment of a workmen's compensation law, and the legislation enacted in pursuance thereof, were not as broad as the present statute. The Constitution now calls for the enactment of "a complete system of workmen's compensation" (Cal. Const., art. XX, § 21, *supra*), and the Legislature has required the courts to construe the compensation law liberally in favor of the employee. (Lab. Code, § 3202, *supra*.) Also the rule of the case has been considerably weakened by its exception to the effect that if the horseplay occasioning the injury is customary and permitted by the employer, injuries resulting therefrom arise out of the employment. (See: *Metropolitan Redwood Lbr. Co.* v. *Industrial Acc. Com., supra; Great Western Power Co.* v. *Industrial Acc. Com., supra;* and, 13 A.L.R. 540.)

Considering, as we may, the propensities and tendencies of mankind and the ordinary habits of life, it must be admitted that wherever human beings congregate, either at work or at play, there is some frolicking and horseplay. Accordingly, an injury sustained by a nonparticipating employee through the horseplay of fellow workers arises "out of" and "is proximately caused by the employment" within the meaning of section 3600 of the Labor Code. The cases of *Coronado Beach Co.* v. *Pillsbury, supra; Fishering* v. *Pillsbury, supra; Federal Mut. Liability Ins. Co.* v. *Industrial Acc. Com., supra; Great Western Power Co.* v. *Industrial Acc. Com., supra;* and *Pacific Emp. Ins. Co.* v. *Division of Ind. Acc. & Safety, supra,* are overruled.

The award is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.