136 Cal.App.2d 600 (1955)
LIBERTY MUTUAL INSURANCE COMPANY et al., Petitioners,
v.
INDUSTRIAL ACCIDENT COMMISSION and JOHN C. LAWRENCE, Respondents.
Civ. No. 8828. 
California Court of Appeals. Third Dist. 
Oct. 28, 1955.
 Leonard, Hanna & Brophy for Petitioners.
 Thomas W. Loris, Burt Lancaster, Everett A. Corten and Daniel C. Murphy for Respondents.
 SCHOTTKY, J.
 This is a proceeding to review and annul an order of respondent Industrial Accident Commission awarding workmen's compensation benefits to respondent John C. Lawrence for an injury received when he was hit on the head by a rock thrown by a fellow workman. The question to be determined by this court is: Did the Industrial Accident Commission exceed its jurisdiction in holding, on the evidence, that the injury arose out of and in the course of the employment?
 The facts as shown by the record are not in substantial dispute and may be summarized as follows:
 Respondent Lawrence, hereinafter referred to as "applicant," and one Ingram were fellow employees employed as *601 drivers of Euclid trucks by certain joint venturers engaged in work at Folsom Dam. They were of equal rank in their employment and their duties were confined to the driving of these Euclid trucks.
 Some time shortly before August 29, 1954, Ingram had made complaints to a driller foreman on the job about the latter's workmen doing certain work which Ingram claimed should have been done by members of his craft union, the teamsters, which other work was not connected with Euclid driver work, however. These complaints reached the ears of one "Bino" who was main superintendent of heavy equipment and the boss of applicant and Ingram. On August 28, 1954, during working hours and on the job, Bino, in the presence of Ingram, accused applicant of agitating about union matters on the job and severely reprimanded him for it, and threatened to fire applicant. Ingram at that time made no comment. The next day at about 20 minutes to 4 a. m. applicant and Ingram came into contact again as they met with several fellow workmen at an automobile in which they were all to ride home from work. The shift ended at 4 a. m., but because of the impossibility in the time remaining for the drivers to make another round trip with their Euclid trucks, they had gathered at the car, waiting for the shift to end. Applicant asked Ingram why the latter had not spoken up "like a man" and accepted blame for what he had done. Ingram cursed applicant and assaulted him without warning, but applicant obtained the upper hand before the two were parted by some of the other men. Applicant then got into the front seat of the car and Ingram remained on the ground on the far side. The other men tried to persuade him to ride home in the same car with applicant, which he refused to do. Ingram then called applicant several foul and obscene names and as a result applicant started to get out of the car to renew the argument with Ingram. Ingram then sprang up from the ground, seized a large rock, and ran around the back of the car toward applicant. At this time applicant had just gotten out of the car and, being warned by one of the others, attempted to run, but Ingram threw the rock. It struck applicant's forehead and fractured his skull, causing the injury in question.
 Petitioners first contend the injury to applicant did not arise out of the employment because it resulted from a fight between employees of equal rank over a matter not connected with their duties. They point out that it was over a labor *602 union matter not connected with their duties for their employer, and that neither fought with a superior but with one another in a personal quarrel the day after the applicant's superintendent reprimanded him.
 In this connection petitioners cite Metropolitan Redwood Lbr. Co. v. Industrial Acc. Com., 41 Cal.App. 131 [182 P. 315], in which the court held that an injury suffered by an employee by an assault by a fellow employee of equal rank during a quarrel between themselves was not compensable under the Workmen's Compensation Act; but that there were two exceptions to this general rule, (1) where the fellow employee causing the injury did so due to a condition of temperament which made it unsafe for him to be around other employees and this condition was known to the employer, or (2) where the injured employee was the superior of the other and was injured by an assault in the course of an attempted exercise of discipline by the superior. The court said in that case it was unable to distinguish in principle between the case before it and Coronado Beach Co. v. Pillsbury, 172 Cal. 682 [158 P. 212, L.R.A. 1916F 1164], and Fishering v. Pillsbury, 172 Cal. 690 [158 P. 215], in which cases it was held that injuries resulting from the playful acts, or "horseplay," of fellow employees, in which the applicants had not participated, were not compensable.
 Respondent commission asserts the injury arose out of the course of the employment inasmuch as the quarrel was a direct outgrowth of the applicant's concern for tenure on his job and an amicable relationship with his superiors, and the desire that his fellow employee, Ingram, not interfere with them, and that such factors were certainly connected with and an outgrowth of the employment. Carr v. Wm. C. Crowell Co., 28 Cal.2d 652 [171 P.2d 5], and Kaiser Co. v. Industrial Acc. Com., 65 Cal.App.2d 218 [150 P.2d 562], are cited for the legal theories upon which they were based. In the Kaiser case, an injury was held compensable when suffered by the employee in intervening in a purely personal quarrel between two other fellow employees. The court said it was a fair inference from the evidence that she was engaged in the service of the employer in attempting to stop the fight so work could go on; that to hold otherwise would be to follow the discarded theory that any voluntary act was an assumption of the risk. In the Carr case, a nonworkmen's compensation case, an employer was held liable to a third person for the wilful and malicious tort of his employee *603 committed in the scope of the employment. The employee had gotten into a quarrel over the doing of certain construction work with the victim, an employee of an independent contractor, and struck the victim with a hammer. The court said it was sufficient that the injury resulted from a dispute arising out of the employment in order to say the assailant was acting within the scope of his employment, and it was not necessary to determine that the act in fact furthered the employer's interests. The court did say the doctrine of respondeat superior would not apply if the employee inflicted an injury arising out of personal malice not engendered by the employment.
 Respondent commission says these two cases rely on the principle expressed in Hartford Acc. & Indem. Co. v. Cardillo (1940), 112 F.2d 11, that an injury caused by assault is compensable if "the work of the participants brought them together and created the relations and conditions which resulted in the clash." In that case Justice Rutledge said:
 "This view recognizes that work places men under strains and fatigue from human and mechanical impacts, creating frictions which explode in myriads of ways, only some of which are immediately relevant to their tasks. Personal animosities are created by working together on the assembly line or in traffic. Others initiated outside the job are magnified to the breaking point by its compelled contacts. No worker is immune to these pressures and impacts upon temperament. They accumulate and explode over incidents trivial and important, personal and official. But the explosion point is merely the culmination of the antecedent pressures. That it is not relevant to the immediate task, involves a lapse from duty, or contains an element of volition or illegality does not disconnect it from them nor nullify their causal effect in producing its injurious consequences."
 This rule was followed, claims respondent commission, in Mutual Implement etc. Co. v. Pittman (1952), 214 Miss. 823 [59 So.2d 547], where the assault apparently was the culmination of "horseplay" between the assailant and applicant, and the injury was held compensable. Respondent concludes by saying that under the view of the Carr, Kaiser, and Cardillo cases the assault arose out of the work because it came as a result of the two men being brought together on the job, whether we take as the source (1) Ingram's original contentions regarding union regulations or (2) applicant's expressing *604 to Ingram his objection to being blamed for them by their boss.
 The referee in his report on the order denying the petition for reconsideration stated that he was bound by the decision of the Supreme Court in State Comp. Ins. Fund v. Industrial Acc. Com., 38 Cal.2d 659 [242 P.2d 311]. In that case the applicant took exception to the manner in which his foreman gave certain work orders on the job, cursed the latter, to which language he took exception, and the applicant assaulted the foreman, and in the course of the altercation received injuries. In affirming the award the court said, at page 660:
 "The workmen's compensation law as declared in the Constitution and statutes compels affirmance of the award. The Constitution confers upon the Legislature power to establish a system of workmen's compensation and create and enforce a liability on employers to compensate their workmen for injuries sustained in the course of their employment 'irrespective of the fault of any party.' (Italics added.) (Cal. Const., art. XX, 21.) The only requirements of the statute are, that to be compensable, an injury must 'arise out of' and 'occur in the course of' the employment. (Lab. Code, 3600.) That is to say the employee must be engaged in some activity growing out of and incidental to his employment at the time he suffers an injury in order to be entitled to compensation under the workmen's compensation law. It cannot be doubted that a dispute between an employee and his superior in regard to the latter's treatment of the former in their relations as boss and worker is incidental to the employment. There is no doubt that the injury occurred in the course of the employment, for that has reference ordinarily to time and place. Hull has satisfied both aspects The crucial issue is whether it 'arose out of' the employment, and that poses the question of whether there is a causal connection between the employment and the injury. That that is the only issue follows from the Workmen's Compensation Act which excludes fault and contributory negligence of the employee and assumption of risk as defenses. That is the express declaration of the Constitution and statutes relating to workmen's compensation. Indeed the statute compels that result inasmuch as it declares that 'serious and wilful misconduct' on the part of the employee does not defeat his recovery; it merely cuts it in half, and not even that under certain conditions (Lab. Code, 4551), thus indicating clearly *605 that misconduct on his part is not a defense. Hence the charge of aggressor cannot be a defense, for it is nothing more than an assertion that the employee was at fault--was to blame--brought it on himself."
 "These principles, including the negation of a requirement that the employee is doing something for his employer's benefit, were clearly stated by this court in the recent case of Pacific Emp. Ins. Co. v. Industrial Acc. Com., 26 Cal.2d 286 [158 P.2d 9, 159 A.L.R. 313], where we abandoned the long standing rule in this state that the victim of 'horseplay' was not entitled to compensation. The logic of that case is here compelling. We said: 'As grounds for annulling the award, the insurer contends that, although the applicant's injury occurred in the course of her employment, it did not arise "out of" her employment and, accordingly, is not a compensable injury within the jurisdiction of the Industrial Accident Commission. ... "It is not indispensable to recovery, however, that the employee be rendering a service to his employer at the time of the injury. [Citations.] The essential prerequisite to compensation is that danger from which the injury results be one to which he is exposed as an employee in his particular employment." ' "
 The court stated further that fault and contributory negligence are not defenses, and hence the charge of aggression could not be a defense. The court quoted with approval the following language of Justice Rutledge in Hartford Acc. & Indem. Co. v. Cardillo, supra:
 "Nor is it necessary, as these cases show, that the particular act or event which is the immediate cause of the injury be itself part of any work done for the employer by the claimant or others. ... 'The risks of injury incurred in the crowded contacts of the factory through the acts of fellow workmen are not measured by the tendency of such acts to serve the master's business.' Not that the act is in the line of duty, or forwards the work, or creates special risk, but that the work brings the employee within its peril makes it, for purposes of compensation, 'part of the work.' "
 Petitioners seek to distinguish the Hull case by pointing out that the case decided that an aggressor could recover compensation, but that on the facts the dispute arose out of the giving of orders to an employee by a superior in the course of his duties, and thus it does not change the rule that as between employees of equal rank injuries suffered *606 in a personal quarrel are not compensable, citing Metropolitan Redwood Co. v. Industrial Acc. Com., supra.
 Petitioners also argue that the activity of Ingram or respondent Lawrence or both in attempting to see that certain union regulations or rules were being followed as far as the drillers on this job were concerned was an activity which was no part of their duties and of no benefit to their employer, and that an injury resulting from an argument based on this activity is not compensable. They cite the case of Pacific Indem. Co. v. Industrial Acc. Com., 27 Cal.App.2d 499 [81 P.2d 572], which involved an injury to an employee while attending a union meeting on the employer's premises. In that case the court held that the injury was not compensable, stating at page 503:
 "... At the time respondent Kendall was injured she was not acting for her employer nor engaged in his service. She was exercising a personal privilege for her own personal benefit in attending a meeting of an organization of which she was a member and the purposes of which were clearly for her own interests and not necessarily in any way for the benefit of her employer."
 We believe that, in view of the later decisions of our Supreme Court hereinbefore cited, the statement in Metropolitan Redwood Co. v. Industrial Acc. Com., supra, to the effect that an injury suffered by an employee through an assault by a fellow employee of equal rank during a quarrel between themselves was not compensable under the Workmen's Compensation Act, must be considered as out of harmony with later decisions.
 In the case of Pacific Indem. Co. v. Industrial Acc. Com., supra, cited by petitioners, the employee, while attending a union meeting on the employer's premises, was injured while attempting to sit on a table. The court held that the meeting was one relating only to union activities with which the employer was prohibited by law from interfering and was not compensable under the Workmen's Compensation Act. We believe that the case is clearly distinguishable on its facts from the instant case, but that if it is construed to support petitioners' position it is out of harmony with the later decisions hereinbefore cited.
 There is no merit in petitioners' further contention that the fight between Ingram and applicant resulting in injury to applicant arose over foul name calling and was in fact a second fight between these two men; and, therefore, even if it *607 is assumed the first fight arose out of an incident of their employment, the second fight was purely a personal quarrel unrelated to the employment; and so the injury did not arise out of the employment. The second encounter, coming so soon after the first, must properly be regarded as a part of the same quarrel and resulting from the same cause.
 [1] We are satisfied that the cases of Pacific Emp. Ins. Co. v. Industrial Acc. Com., 26 Cal.2d 286 [158 P.2d 9, 159 A.L.R. 313], Carr v. Wm. C. Crowell Co., supra, and State Comp. Ins. Fund v. Industrial Acc. Com., supra., require an affirmance of the award where, as in the instant case, there is ample evidence to support the inferences that the quarrel between Ingram and applicant, resulting in applicant's injury, originally arose out of the employment because it concerned the work relationship between the superintendent on the job and applicant, and the latter's tenure on the job, for which applicant rightly or wrongly blamed certain on-the-job activities of Ingram, and that the rock-throwing incident was simply a continuation of and part of this work dispute, and could not be logically isolated as a separate, unrelated matter. Here the applicant feared for his job, was under threat of discharge for the act or acts of a fellow worker. Certainly the dispute did in fact arise from the "crowded contacts of the factory"; did arise from and was incident to the employment. The assault occurred on the premises of the employer, during working hours and at the hand of an employee for whom the employer was responsible under the holding of the Carr case and authorities cited.
 Article XX, section 21, of the California Constitution, as amended in 1918, provides: "The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of Workmen's Compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workmen for injury or disability ... sustained by the said workmen in the course of their employment, irrespective of the fault of any party."
 The Legislature has declared that in the determination of controversies arising under the statutes governing workmen's compensation, their provisions "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (Lab. Code, 3202.) *608
 In view of the statute, the constitutional provision and the decisions hereinbefore cited, we conclude that the injury sustained by the applicant arose out of and was "proximately caused by the employment" within the meaning of section 3600 of the Labor Code.
 The award is affirmed.
 Van Dyke, P. J., and Peek, J., concurred.