CASE 48.—PROCEEDINGS BY MINNIE F. FOXWORTHY FOR
          A FINAL SETTLEMENT AS EXECUTOR OF T. S.
          FOXWORTHY, DECEASED, TO WHICH MARTHA
          ADAMS FILED EXCEPTIONS.—January 26, 1910.

## Foxworthy v. Adams

Appeal from Nelson Circuit Court.

Samuel E. Jones, Circuit Judge.

Plaintiff appealed and defendant filed a cross appeal. Affirmed on the original and reversed on the cross appeal.

1. Gifts—Inter Vivos—Gift of Donor's "Check."—A gift of one's check is incomplete until the check has been paid or accepted by the bank, for a "check" is a mere order to the payee to draw the amount called for, and, when given without consideration, it may be revoked by the maker so long as it remains unacted on in the hands of the payee.

2. Gifts—Inter Vivos—Gift of Donor's Check.—A gift of the donor's check, payable immediately, and delivered subject to the terms of a written memorandum stipulating that the check shall not be payable until after the donor's death, is not a valid gift inter vivos.

3. Husband and Wife—Contracts—Validity.—Notwithstanding the statutory power of husband and wife to contract with each other, husband and wife may not contract with each other for the payment by the husband to the wife for her services in nursing him during his illness; it being the duty of husband and wife to attend, nurse, and care for each other, where either is unable to care for himself.

4. Bills and Notes—Checks—Consideration.—A check given in payment of services rendered and thereafter to be rendered the maker by the payee is supported by consideration and is enforceable, though delivered subject to a written memorandum stipulating that the check shall not be payable until after the maker's death.

5. Evidence——Parol Evidence—Consideration of Check.—Evidence of the actual consideration of a check, delivered pursu-

ant to a written memorandum reciting that the check was given for a specified sum due from the maker to the payee, is admissible.

6. Gifts—"Inter Vivos"—What Constitutes.—To constitute a valid "gift inter vivos," there must be an absolute transfer of the property from the donor to the donee taking effect immediately and fully executed by a delivery by the donor and acceptance by the donee, and a gift to take effect after the donor's death, the donor in the meantime retaining the control of the property, is not a valid gift.

7. Husband and Wife—Gifts of Negotiable Instruments—Written Assignments.—An indorsement on a note, reciting that the payee assigns the principal to his wife, he retaining the interest for life, and that should he outlive his wife the note shall remain a part of his estate, and a delivery of the note is not a valid gift inter vivos to the wife.

C. T. ATKINSON and JOHN S. KELLY for appellant.

JOHN A. FULTON and N. W. HALSTEAD for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER.

T. S. Foxworthy died, testate, in Nelson county, Ky., on July 10, 1907, aged 87 years. His first wife, Nancy Foxworthy, died many years ago. About 11 years prior to his death, he married appellant, who was then Minnie Fitzgerald. T. S. Foxworthy had no children by either wife. His first wife, Nancy Foxworthy, devised to him a well-improved homestead of 27 acres, located on the Louisville pike about 8 miles from Bardstown, but only for the period of his natural life. T. S. Foxworthy, at the time of his death, owned a farm worth about $6,000, and personal property amounting to $5,000 or $6,000. Several years prior to his death, he made a will, by which he devised to his wife, Minnie Foxworthy, this farm and certain

personal property of the value of $1,700. The
residue he devised to his heirs at law per stirpes. By
a codicil he made certain bequests to a servant,
Henry Graham, to the Baptist Orphans' Home, and
to the trustees of the Cox's Creek Baptist Church.
The amount of his property devised to his wife was
about $7,700, while that devised to his heirs at law
amounted to about $4,000.

For almost two years prior to his death the testa-
tor was confined to his house, and nearly all the time
to his bed. During that time he required constant
nursing and attention. This duty fell upon his wife.
The testimony shows that it was well and faithfully
performed; indeed, no one could have been more duti-
ful and attentive than appellant was during the per-
iod of his illness. Dr. Charles McClure, a nephew of
his first wife and a very close neighbor, gave him
such medical attention during this period as his con-
dition required. The evidence shows that he, too,
was faithful and attentive and made frequent visits to
the home of the testator. On March 19, 1907, the
testator drew a check on the People's Bank of Bards-
town, Ky., for the sum of $500, payable to the order
of appellant, Minnie Foxworthy. On March 20,
1907, a second check was drawn on the same bank for
a similar amount, payable to the order of Charles Mc-
Clure, the physician who attended him. The evidence
tends to show that the body of each of these checks
was written by Dr. McClure, and the testator's name
was signed thereto by his wife. It further appears,
however, that she frequently, at the direction of the
testator, signed his name to checks.

On March 22, 1907, J. C. Abell, a neighbor and close
friend of the testator, who frequently assisted him in
the transaction of his business, wrote, at the request

of the testator, the following paper: "March 22nd, '07. I this day give to my wife, Minnie F. Foxworthy, and Dr. Charles each a check for five hundred dollars, payable out of my estate after my death. It being my desire to make each of them a present for their close attention to me during my sickness, not having the ready cash on hand I take this method, as it is my desire that they shall each receive the above amount. $180.05 was due Dr. McClure on acct. to date. The balance, $319.95, I give to him as a present. T. S. Foxworthy, Witness: Jas. C. Abell." This paper was singed by T. S. Foxworthy, and his signature witnessed by J. C. Abell. This writing, together with the checks, was given to Abell by the testator to keep. The next morning the testator sent for Abell and told him to bring the checks back to him, but also stated that if he met Dr. McClure to deliver the latter his check. This Abell did. He then returned the other check to Foxworthy, who gave it to his wife in Abell's presence. The dictated writing of March 22, 1907, Abell kept until after the testator's death; the testator having directed him so to do. On the 20th day of February, 1907, some five months prior to his death, the testator, who then held a note on J. C. Abell for $1,000, dated May 29, 1906, due one day after date bearing interest from date, requested Abell, who happened to be at his home, to write upon the note the following indorsement: "I this day assign the principal of this note to my wife, Minnie Foxworthy, and the interest I am to have until my death, this February 20th, 1907. Should I outlive my wife then it to remain a part of my estate." Abell then wrote the above assignment upon the note in question. The testator signed his name

below the assignment, and Abell thereupon signed his name as witness.

On August 12, 1907, Mrs. Foxworthy qualified as the testator's executrix. On that day certain indebtedness to the estate was paid. Out of this indebtedness the two $500 checks, made to Minnie Foxworthy and Dr. McClure, were satisfied and paid. On December 12, 1907, she made a partial settlement as executrix, and was credited by the two $500 checks. On May 8, 1908, she made final settlement with the county court. On June 8, 1908, Martha Adams and others, as legal heirs of the testator, filed exceptions in the Nelson county court to said two credits of $500 each, and also claimed that she should be charged with the Abell note of $1,000 and interest as part of the testator's estate for which she had not accounted in her settlements. On the trial of these exceptions evidence was heard and reduced to writing and signed by the county judge, and made a part of and filed with the settlements. The county court surcharged the settlement by striking out the two credits of $500 each, and holding that the executrix should account as such for the Abell note. On appeal to the Nelson circuit court the chancellor held that the executrix was entitled to credit for the two checks, but must account for the Abell note and interest. From this judgment the executrix has appealed and Martha Adams and others have prosecuted a cross appeal.

We shall first discuss the propriety of the court's action with reference to the two checks. The rule is that a gift of ones' own check is incomplete until the check has been paid or accepted by the bank. "A check, being a mere order or authority to the payee to draw the amount called for, when given without

consideration, may be countermanded or revoked by the maker so long as it remains unacted on in the hands of the payee. Until payment or acceptance there is not a complete delivery of the subject-matter such as is essential to constitute a valid gift." Am. & Eng. Encyc. of Law, vol. 14, p. 1030.

In the case of Throgmorton v. Grigsby's Adm'r, 124 Ky. 512, 99 S. W. 650, 30 Ky. Law Rep. 661, it was held that the issuance and delivery of a check for the purpose of a gift is not a delivery of the money, so that, the check not having been paid or accepted by the drawee, the gift is not completed, and therefore the drawer can not be considered as holding the money as trustee for the payee. In the case before us the checks were made immediately payable, but they were delivered subject to the terms of the written memorandum handed to Abell. Appellant and Dr. McClure accepted the checks upon those terms. By such terms the checks were not even payable until after the death of the maker. It is perfectly plain, therefore, that the checks are not good as a gift inter vivos.

But it is insisted by counsel for appellant that the checks have sufficient consideration to support them, and are therefore collectible as other contracts, no matter how denominated by the maker. The answer to this question depends on whether or not there was any obligation on the part of the testator to pay the sums represented by the checks. In this connection it is contended that Mrs. Foxworthy nursed and cared for the testator during his sickness, and the service thus performed constituted sufficient consideration for the check given to her. While the power of husband and wife to contract with each other has been greatly enlarged by recent statutes, we con-

clude that it is not within the power of husband and wife to contract with each other for the payment for such services as were rendered by appellant. It is the duty of husband and wife to attend, nurse, and care for each other when either is unable to care for himself. It would be contrary to public policy to permit either to make an enforceable contract with the other to perform such services as are ordinarily imposed upon them by the marital relations, and which should be the natural prompting of that love and affection which should always exist between husband and wife. We therefore conclude that neither the check, itself, nor the services which appellant performed, created any obligation against the estate of the testator.

A different question is presented in the case of the check to Dr. McClure. It is shown that prior to the execution of the check he had performed medical services of the value of $180.05. The memorandum referring to the circumstances under which the check was given shows that it was given not only in payment of the bill theretofore rendered, but as a present for the close attention given the testator during his sickness. There is proof in the record to the effect that the check was actually given in payment of the services theretofore rendered and of the services thereafter to be rendered. It is insisted by counsel for appellant that such testimony contradicts the written memorandum containing the terms under which the check was delivered. It was competent, however, to show the actual consideration. Such proof was, therefore, admissible. Furthermore, such proof did not really contradict the writing, for it is evident that, while Mr. Foxworthy used the expression "present," it was his purpose to compensate the

physician for his services rendered. We, therefore, conclude that, as the check to Dr. McClure is support- ed by sufficient consideration, appellant is entitled in her settlement to be credited with the amount thereof.

We next come to a consideration of the Abell note. Did the assignment and delivery of the note consti- tute a valid gift inter vivos? The rule is that to con- stitute a valid "gift inter vivos" there must be a gratuitous and absolute transfer of the property from the donor to the donee, taking effect immediately, and fully executed by a delivery of the property by the donor and acceptance thereof by the donee. Gifts inter vivos have no reference to the future, but go into immediate and absolute effect. Thus a gift of property to take effect after the donor's death, the donor in the meantime retaining the control and do- minion of the property, can not be sustained. The delivery must be absolute. All gifts that are not to take effect at once are void. In the case of Stark v. Kelley et al., 113 S. W. 498, the rule is thus stated: "To constitute a gift inter vivos, the property must be delivered absolutely, and the gift must go into im- mediate effect, and, where future control over the property remains in the donor until his death, there is no valid gift inter vivos." In the case of Walden's Adm'rs v. Dixon, 5 T. B. Mon. 170, the defendant, Dixon, in an action of detinue by David Walden's ad- ministrator, claimed the property by gift from said David, and the defendant proved by one witness that, a day or two before the intestate left Kentucky, he told the witness that he had given up his mare to the defendant, and that if he never did return defendant was to have her, but if he returned he was to have her again. The mare was left in Dixon's possession. The intestate never returned. This court held that

the gift of the mare was not a valid gift inter vivos, for the reason that the right and interest retained by Walden were inconsistent with the definition of a title by gift, as explained by Blackstone, in his chapter on Gift, Grant, and Contract.

In the light of the above authorities, let us examine the language of the assignment. To arrive at the purpose and effect of the assignment, we must consider the whole language employed. In the first place, Mr. Foxworthy, assigns the principal of the note to his wife, but reserves to himself the interest as long as he lives. He then says: "Should I outlive my wife, it is to remain a part of my estate." It is the contention of appellant that the property was given to her absolutely, subject to be defeated by her death during Mr. Foxworthy's lifetime. We might reach this conclusion if we considered the first clause alone. As a matter of fact, however, the assignor reserved to himself not only the interest on the note as long as he lived, but the note itself in case he survived the assignee. The use of the word "remain" is significant; it indicates that the note was to continue a part of his estate until his death in the lifetime of the wife, and was not to take effect until that time. Furthermore, Mrs. Foxworthy could not have collected the proceeds during the lifetime of the assignor. She alone could not have instituted suit upon the note and have recovered. When the language of the whole assignment is carefully considered, it is manifest that Mrs. Foxworthy's title to the note differs in no wise from the title obtained by Dixon in the transaction above referred to. In neither case did the gift become effective until the death of the donor. We, therefore, conclude that the

assignment and delivery of the Abell note did not constitute a valid gift inter vivos.

The judgment is affirmed on the original appeal, and reversed on the cross appeal.