### H. SMITH COAL CO. et al. v. MARSHALL et al.

Court of Appeals of Kentucky.
Oct. 26, 1951.

Craft & Stanfill, Hazard, for appellants.

Napier & Napier, Hazard, for appellees.

SIMS, Justice.

Andy Marshall, a coal miner, met his death on Oct. 4, 1948, while at work in the mine of his employer, H. Smith Coal Company. The referee of the Workmen's Compensation Board, hereinafter referred to as the Board, denied compensation to his widow, Luna Marshall, and his infant dependent daughter, Lucille, upon the ground that the proof showed the husband and father died from a heart attack and not from breathing "bad air" in the mine as they claimed. The full Board upheld the finding of the referee and the widow and daughter asked a review by the circuit court, which reversed the Board, and the Company appeals.

■ The sole question before us is whether there is any substantial competent evidence in the record which supports the Board's finding. If there is, it must be upheld. It is so provided in KRS 342.285. The cases are legion on the subject and rather than cite any of them we refer the reader to 19 Kentucky Digest, "Workmen's Compensation", ■

Mr. Marshall was 57 years of age at the time of his death. Proof was introduced in behalf of claimants that he was in good health until his death and never had any trouble with his heart. Testimony was given by miners who worked with Mr. Marshall that the air in the mine was "pretty bad" the day he died and that Mr. Marshall complained the "bad air was hurting him". However, the record shows this "bad air" had no harmful effect upon the other miners working with Mr. Marshall, the day he died.

The widow consented to an autopsy which was performed by Dr. H. H. Howze at the undertaking establishment soon after the body had been embalmed. The doctor made a written report of several pages showing what his autopsy disclosed. Without going into the details of the report or of Dr. Howze's testimony, both show he found a coronary occlusion, and it was his opinion that death was caused by a heart attack. He was "unable to find any evidence of trauma, poisoning or anoxemia".

The widow had introduced no medical evidence before the referee and when she asked a full Board review she requested to be allowed to take additional proof, which request was granted. She introduced Dr. Morris M. Weiss, an eminent heart specialist of Louisville, whose testimony was based upon the written report Dr. Howze made on the autopsy he performed. Dr. Weiss testified: "It is my sole contention that in reading the autopsy report of Dr. Howze, there is no proof that an acute coronary occlusion had existed, though it is possible that an occlusion could have existed for months or even years prior to the death of Mr. Marshall. * * * It is possible that Mr. Marshall died from carbon monoxide poisoning. There is no proof as evidenced by the autopsy report of Dr. Howze that he died from an acute coronary occlusion".

There is a direct conflict in the medical testimony. The doctor who made the autopsy and reported on it says death was due to a coronary occlusion, while the other doctor testified the report showed no acute coronary occlusion, "and it was possible Mr. Marshall died from carbon

**42**

monoxide poisoning". The Board accepted the testimony of Dr. Howze rather than that of Dr. Weiss, and perhaps was influenced in so doing by the fact that the "bad air" in the mine had no harmful effect upon the men working with Mr. Marshall on the day he died.

As competent substantial evidence supported the Board's finding that Mr. Marshall's death was due to a coronary occlusion rather than from carbon monoxide poisoning, the circuit court could not weigh the evidence for itself but was bound by the finding of the Board and was without authority to disturb it. KRS 342.285 and the numerous cases listed under ▮ of the 19 Kentucky Digest under the heading of "Workmen's Compensation". There is no reason to refer to or discuss the authorities cited by appellees since they do not run contra to the statute and cases just cited.

The judgment of the circuit court setting aside the finding of the Board is reversed.