**TYLER–COUCH CONST. CO.**

v.

**ELMORE.**

Court of Appeals of Kentucky.

Jan. 22, 1954.

Wm. A. Hamm, Boyd F. Taylor, Jr., London, for appellant.

Roy W. House, Manchester, for appellee.

STANLEY, Commissioner.

The Workmen's Compensation Board denied compensation to Charlie Elmore, an employee of the appellant, Tyler-Couch Company, (perhaps correctly styled Couch Construction Company) on the ground that the injuries were sustained in horseplay. The circuit court vacated the Board's finding and rendered judgment for compensation and hospital bills, etc. in stated amounts. The judgment was in accordance with the recommendation of the referee, which had been rejected by the Board. The court expressed the opinion that the essential facts were not in dispute and that the finding of the Board was an erroneous application of the law to the proven facts.

█ In the course of the opinion, the judge stated that he personally knew the witnesses for the employer, especially Dan Wagers, and that he did not believe he was at the scene of the accident, as he testified. There had been no attempt to impeach Wagers or any other witness. The court was not free to decide the case de novo or to consider the credibility of the witnesses. As many times expressed, the function of the circuit court and this court as to the facts is to review the record to determine whether or not the finding by the Board is supported by any evidence of probative value. KRS 342.285(3) (d), 342.290; Inland Steel Co. v. Newsome, 281 Ky. 681, 136 S. W.2d 1077; H. Smith Coal Co. v. Marshall, Ky., 243 S.W.2d 40. In any event, the court, upon reaching the conclusion that the denial of an award was erroneous, should have remanded the case to the Board for proceedings in conformity with its directions. KRS 342.285; Black Motor Co. v. Spicer, 290 Ky. 111, 160 S.W.2d 336. It may be observed, however, that under some conditions a judgment of award, though technically erroneous, may be affirmed as an expeditious disposition of the case. Louisville Gas & Electric Co. v. Duncan, 235 Ky. 613, 31 S.W.2d 915.

The right to recover compensation for industrial disability rests upon double conditions being established, namely, that it resulted from an accident (1) occurring in the course of the employment, and (2) arising out of the employment. KRS 342.005.

█ It is unquestioned that the employee, Charlie Elmore, was injured while he was engaged in performing the duties of his job, that is to say, during the course of his employment. The question is whether the injuries were sustained "by an accident arising out of" his employment. The term "arising out of" involves the idea of causal relationship between the employment and the injury. W. T. Congleton Co. v. Bradley, 259 Ky. 127, 81 S.W.2d 912, 913.

In April, 1951, the claimant and other employees of the construction company were working at a railroad station unloading road oil from railroad cars into motor tank trucks. Employees of another company were engaged in loading lumber on railroad cars nearby. The men of the two crews had been horseplaying or pranking with one another during brief intervals of leisure. On the occasion of the accident, Elmore placed a bucket of burning kerosene under a valve in a tank truck to "burn it out" so that the road oil would flow freely. According to Elmore's testimony, he had picked up the flaming bucket with a pole run under the handle, pulled the bucket out from under the truck and was carrying it, or had just put it down, when Enoch Cody, an employee of the lumber company, came along and kicked over the bucket. Elmore's clothing caught fire. He ran some fifty yards and jumped into the river, but suffered severe burns. Elmore testified that there had been no horseplay just before nor at the time of the accident. Cody testified that he and one of his fellow workmen had been "acting the fool with one another" and he had suggested they go over and "pick on" or "whip" Charlie; that as he approached him, Charlie jabbed the stick on which he was carrying the flaming bucket and that he, Enoch, grabbed at it and stumbled in getting out of the way. In doing so, he had accidently tipped the bucket over. George Napier, who was Elmore's fellow workman, testified that while Elmore was removing the bucket from under the truck, Cody came up with a knife in his hand,

bantered Elmore, saying "You fool with me and I'll come and get you" and then kicked the bucket over. Napier's testimony is to the effect that the accident occurred before Elmore had responded or participated in the horseplay. Dan Wagers, who seems to have been a mere onlooker and not a member of either crew, testified that Elmore was standing by the bucket of fire warming himself when Cody walked toward him with an open knife in his hand and then Elmore picked up the bucket on the stick and jabbed it at Cody, who then kicked it.

The Compensation Board found as the facts that the claimant and Cody were engaged in horseplay and that the claimant "was not an innocent victim thereof." The Board further concluded that "the causation of the injury was not connected with the employment," and ruled as a matter of law, as we have stated, that the resulting disability was not compensable. The courts must accept the facts as determined by the Board.

■ We first dispose of the appellee's contention that the Board should not have considered the evidence of previous horseplay by these parties as it was immaterial. He cites in support Rex-Pyramid Oil Co. v. Magan, 287 Ky. 459, 153 S.W.2d 895, in which it was said that an injured employee will not be denied compensation by reason of having previously engaged in horseplay. The context is that such playing had come to an end when the employee was killed by an automobile while crossing a highway to go to a telephone to make a call in the discharge of his duties. Here the evidence that these participants—Elmore and Cody —and others of the two crews had been playing and pranking with one another before this occurrence was properly considered as a collateral circumstance which tended to show that the immediate foolhardy act of these young men was a continuing course of conduct of the same character. Proof of the occurrence of other events or acts or conduct upon other like occasions which have relevant and material bearing upon the fact in issue is admissible as tending to explain or show the purpose

and character of the particular occurrence under scrutiny. 20 Am.Jur., Evidence, § 303; Federal Trade Commission v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L. Ed. 1009.

■ It is the general rule that compensation is not recoverable for injuries sustained through horseplay or practical joking where it was independent of and disconnected from performance of any duty of employment since such injuries cannot ordinarily be regarded as having originated in any risk connected with and caused by the employment, that is to say, when the injuries did not arise out of the employment. There are various judicial concepts as to the effect of the injured employee's participation or non-participation in foolhardy conduct or horseplay. 58 Am.Jur., Workmen's Compensation, § 268. The many cases collected in the series of annotations cited in support of the text show, quite naturally, the influence of particular circumstances and distinguishable degrees of activity. Another factor was whether or not the employer impliedly condoned the conduct.

In our early and leading case of Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S.W. 152, 13 A.L.R. 524, a workman, while getting ready to go home at the close of the day, was electrocuted by an uninsulated wire which had been run as a prank by a fellow employee to a washbasin. In holding his death compensable, we gave major consideration to the fact that the employee was an innocent victim of the horseplay. Our decision and the cogent reasoning of Judge Cardozo for a like conclusion in Leonbruno v. Champlain Silk Mills, 229 N.Y. 470, 128 N.E. 711, 13 A.L.R. 522, seem to have directed the trend, developed by now as the weight of authority, that non-participation of an injured employee takes a case out of the general rule of non-compensability. Another well reasoned opinion is Pacific Employers Ins. Co. v. Industrial Accident Commission, 26 Cal.2d 286, 158 P.2d 9, 159 A.L.R. 313.

In Hazelwood v. Standard Sanitary Mfg. Co., 208 Ky. 618, 271 S.W. 687, 688, a fac-

tory employee, while cleaning another's clothing with a compressed air hose, as was customary, applied the hose to the body of his fellow workman and caused his death. The deceased had been momentarily before engaged in the "skylarking and horse play" with the hose. The court did not think the "inexcusable and revolting horse play" was incidental to the employment or arose out of it, hence held the death was not compensable.

In Rex-Pyramid Oil Co. v. Magan, 287 Ky. 459, 153 S.W.2d 895, cited above, the factual elements established that the horseplay had ended and the deceased employee was thereafter killed while crossing a road on his way to a place his duties called him for the purpose of his employer's business. Although in looking back to the scene of the sportive acts in which he had just played a part he was guilty of contributory negligence, he was, nevertheless, killed during a hazard incidental to his job. In the course of the opinion it was observed that the fact that a workman, while waiting for time to arrive for him to resume his work, may have engaged in a bit of horseplay will not militate against his right otherwise established to receive compensation for disability resulting from injury. This obiter dictum seems to perceive some distinction in the character of horseplay, such as that it was not reasonably dangerous to life or limb and was a mere by-play.

The present case is brought within the general rule of non-compensability since the claimant, as the Board found, "was not an innocent victim" of the rough play in which he and Cody were engaging. True, as the opinions of the Board and the circuit court point out, the handling of the fire in the bucket was a risk connected with the claimant's employment, indeed, was part of his job. But that was only a situation. It was not the action causing injury. We concur in the conclusion of the Board that the playful act of a stranger to the employment was not a rational consequence of the work the employee was doing.

While the purpose of workmen's compensation statutes is to create liability and corresponding right irrespective of fault of either the employer or employee, yet the conditions of liability and right to compensation must be recognized. This is so, however lamentable the tragic result of the accident and however sympathetic the Board or the courts may be. The statute is not a general accident insurance policy. It covers only death or injury from a cause related in some degree to an exposure to industrial hazard, or such as arises from the perils of the employee's job. Harlan Collieries Co. v. Shell, Ky., 239 S.W.2d 923.

The judgment is reversed with directions to confirm the decision of the Workmen's Compensation Board.