**RAILROAD COMMISSION OF KENTUCKY et al.**

**v.**

**ILLINOIS CENT. R. CO.**

Court of Appeals of Kentucky.

March 5, 1954.

J. D. Buckman, Atty. Gen., M. B. Holifield, Asst. Atty. Gen., for appellants.

Stites, Wood, Helm & Taylor, Louisville, for appellee.

COMBS, Justice.

The question is whether the Illinois Central Railroad Company has the right to discontinue operation of two of its passenger trains in Kentucky. The Railroad Company for many years has operated daily two passenger trains each way between Fulton and Louisville, Kentucky. Trains Nos. 101 and 102 have been operated in the daytime, and trains Nos. 103 and 104 have been operated at night. In April, 1952, the Company filed with the Railroad Commission notice of intention to discontinue the daytime trains, being Nos. 101 and 102. The Commission, after hearings, disapproved the Company's proposal. Although there is no appeal, as such, from the orders of the Railroad Commission (City of Middlesboro v. Louisville & N. R. Co., Ky., 252 S.W.2d 680) the case reached the Franklin Circuit Court under the provisions of KRS 276.370. The circuit court held that the Railroad Company could discontinue operation of the two trains. The Railroad Commission, through the Attorney General, has appealed from the judgment of the circuit court. No question of procedure is involved. The only question is whether there is sufficient evidence to support the findings of the Railroad Commission. If there is, then the Franklin Circuit Court exceeded its authority in setting aside the Commission's order.

It appears from the testimony heard by the Commission and from the briefs that there is considerable public interest in the retention of these trains by the citizens of western Kentucky. Several witnesses appeared before the Commission and made vigorous protest to the discontinuance of the two trains. The erudite Assistant Attorney General, in a forceful oral argu-

ment and a comprehensive brief, vigorously insists that the order of the Commission should be sustained. Both in argument and in brief he has run the gamut from the Federal Constitution to the historical duty of the Railroad Company to provide a newsbutch on its passenger trains. But it seems to us his argument, for the most part, is directed toward what he thinks the law ought to be rather than what it actually is. Toward the end of his brief he candidly and accurately states the issue which is before us in these words: " * * * it is the law that governs the present litigation, and unless there is evidence before the Commission and this court, that such passenger service in the future can reasonably be expected to operate at a profit, it is the duty of the Commission, and also of the court to permit the discontinuance of the passenger service. This may result in a great inconvenience to the traveling public, but the traveling public's convenience cannot be considered."

A railroad company's right to discontinue the operation of a passenger train in this state is governed by KRS 276.480. The applicable part of that statute reads: "Upon the application of any carrier by railroad, and after such notice to the public and such hearing as the commission may by order prescribe, the Railroad Commission of Kentucky shall have the power and it shall be its duty to authorize common carriers by railroad to discontinue passenger service by railroad on any line of railroad or branch thereof in this state, whenever in the opinion of said Railroad Commission any such passenger service by railroad has been and is being carried on at a loss and there is no reasonable probability that such condition will in the future change for the better, or whenever any passenger service by railroad has for any reason become unnecessary in the public interest; * * *."

Another statute, KRS 276.370, provides that "the findings of the commission shall be prima facie evidence as to the facts found". Since the validity of these two statutes is not questioned, it is apparent that our review of this case is limited to a determina-

tion of whether there is sufficient evidence to support the order of the Railroad Commission. In order to determine that question we must first decide what yardstick should be used in measuring the evidence. We have found no case construing these two statutes on that point. So, we look to the rule which has been used in weighing the findings of other administrative bodies under somewhat similar statutes. In workmen's compensation cases, where a review of the facts by the courts is limited to a determination of whether the findings of the board support its decision (KRS 342.-285(3)(d), it has been held that any evidence of substance is sufficient to support the board's decision. Totz Coal Co. v. Creech, Ky., 245 S.W.2d 924; H. Smith Coal Co. v. Marshall, Ky., 243 S.W.2d 40; 19 Kentucky Digest, "Workmen's Compensation," In reviewing findings of fact of the State Board of Claims we have said that the findings are conclusive if supported by substantial evidence. Commonwealth v. Mudd, Ky., 255 S.W.2d 989, and cases there cited. The same rule has been applied on appeals from the findings of the Motor Transportation Department. Whitney v. Newbold, 270 Ky. 209, 109 S.W.2d 406.

 Although the wording of the different statutes on this point is not identical, the meaning is the same for all practical purposes. It follows that our review in this case is limited to the narrow question whether there is any substantial evidence, or, as said in some of the cases, any evidence of substance, to support the finding of the Railroad Commission.

 We look now to the Commission's finding and to the evidence upon which it is based. The Commission found upon uncontradicted evidence that from 1949 through 1952 the two trains in question have been operated at a substantial loss. If this had been the only finding, it is clear the Commission would have been required under the terms of the statute to approve the proposal to discontinue the trains. But the Commission also found that due to the industrial development now tak-

ing place in western Kentucky "there is reasonable probability that in the near future the condition that has heretofore produced a loss from the service of passenger trains 101 and 102 will change and that said service can and will be operated at a profit in the near future." It is this finding upon which the appellants base their hopes of sustaining the Commission's order.

These two trains were not only operated at a loss from 1949 through 1952 but the loss has increased progressively from year to year. Evidence taken to bring the facts up to date, as authorized by KRS 276.370, while the case was before the circuit court, shows that the loss from the operation of the trains continued to increase during the year 1953. It is said, however, that in view of the great industrial development now taking place in western Kentucky there is substantial basis for the Commission's findings that the trains can be operated at a profit in the future.

A number of witnesses testified, and of course it is general knowledge, that in recent years there has been considerable industrial development in western Kentucky, especially in the vicinity of Paducah where the atomic energy plant is located. Using this as their premise, these witnesses expressed the opinion that greater use of these trains by the public could reasonably be expected in the immediate future. This might appear at first blush to be a plausible conclusion except that it is completely at variance with the evidence in the record. It is shown by the evidence that the territory served by these trains already has experienced a very substantial industrial growth, but, in spite of this, the use of the trains has decreased and the loss from their operation has increased. It is also shown that during the past five years the train schedules have been changed several times in an effort to accommodate more members of the traveling public and for a time a modern diesel train was operated as an added inducement, but the passenger traffic has continued to decline and losses have continued to increase. Moreover, it is apparent that what is referred to as opinions of the witnesses might with more accuracy be described as an expression of their hopes rather than their expectations.

We do not consider it necessary to extend the discussion of this case. These two trains admittedly have been operated at a loss to the Company for the past several years. That being so, the Company is entitled, under the plain terms of the statute, to discontinue the trains unless there is a reasonable probability that the situation will improve. Although the Commission expresses the opinion that conditions will improve, we find no evidence to support that conclusion. The speculation of the witnesses as to possibilities is not sufficient to support the finding of the Commission in the face of positive and uncontradicted evidence to the contrary.

In view of the conclusions heretofore stated, it is unnecessary to discuss the other points raised in the briefs. We think the trial judge reached the right conclusion.

The judgment is affirmed.

STEWART, J., dissenting.