COMMONWEALTH of Kentucky, on Relation of KENTUCKY RAILROAD COMMISSION, etc., et al., Appellants,

v.

ILLINOIS CENTRAL RAILROAD COMPANY, Appellee.

Court of Appeals of Kentucky.

March 8, 1957.

**804**

Jo M. Ferguson, Atty. Gen., M. B. Holifield, Asst. Atty. Gen., for appellants.

Thomas J. Wood, Lively M. Wilson, Stites, Wood, Helm & Peabody, Louisville, Joseph H. Wright, John W. Freels, John W. Foster, Chicago, Ill., of counsel, for appellee.

MONTGOMERY, Judge.

The right to discontinue operation of the last two passenger trains between Fulton and Louisville via Paducah is involved.

The appellee for many years operated daily two passenger trains each way. Trains Nos. 101 and 102 were operated in the daytime. Their discontinuance was upheld on March 5, 1954. Railroad Commission of Ky. v. Illinois Cent. R. Co., Ky., 265 S.W.2d 797. Trains Nos. 103 and 104 were operated at nighttime.

On October 13, 1954, appellee filed with the Kentucky Railroad Commission an application for authority to discontinue the operation of the two remaining passenger trains. After hearings were held, the Commission disapproved the application. Appellee gave notice of its intention to discontinue the trains. The Commission then filed this action under KRS 276.370 to enforce its order. Judgment was rendered in the circuit court directing the Commission to enter an order permitting appellee to discontinue the operation, from which the Commission has appealed.

The authority sought by appellee is governed by KRS 276.480, the pertinent part of which is:

" *  *  * the Railroad Commission *  *  * shall have the power and it shall be its duty to authorize common carriers by railroad to discontinue passenger service by railroad on any line of railroad or branch thereof in this state, whenever in the opinion of said Railroad Commission any such passenger service by railroad has been and is being carried on at a loss and there is no reasonable probability that such condition will in the future change for the better, or whenever any passenger service by railroad has for any reason become unnecessary in the public interest; *  *  *"

■ Appellee contends that the two passenger trains were being operated at a loss and there was no reasonable probability that such condition would change for the better. The burden of proof was on the appellee. Commuters' Committee v. Pennsylvania Public Utility Commission, 170 Pa. Super. 596, 88 A.2d 420. Appellants urge that: (1) appellee failed to sustain the burden of proof as to loss; (2) any loss sustained was due to a lack of good faith effort on the part of appellee to avoid it; (3) the services are necessary in the public interest; and (4) the title of the legislative Act is defective.

■ The circuit court and the Commission both found that appellee had sustained a loss in the operation of the trains. Appellee's evidence of the financial loss sustained was based upon the accounts of the railroad company which were shown to have been kept in accordance with the regulations of the Interstate Commerce Commission. The evidence was prepared in accordance with a formula adopted by the National Association of Railway and Utility Commissioners. From the evidence as brought up to date before the trial in the circuit court, the annual net losses on the operation of the two trains were shown to have been $713,169 for the twelve months' period ending May 31, 1954, $779,701 for the year 1954, and $731,871 for the year 1955. The net out of pocket losses, that is, the difference between the revenue and the actual operating expense for the same trains for the same periods, were $154,246, $213,105, and $194,844, respectively. The findings of the Commission and the circuit court as to loss were supported by substantial evidence.

■ The evidence was insufficient to show that the losses in passenger revenue had been offset by freight revenue accruing from increased rates. It was contended that the appellee, with other railroad companies, had sought and obtained authorization for an increase in freight rates. The passenger revenue deficit was one of several bases urged in justification of the increase. It is admitted that appellee as a railroad system is operating profitably enough to pay dividends, but there is no showing as to what part of the profit, if any, arising from the increased freight revenue could or should have been allocated to the Fulton-Louisville line, or whether such allocation would have been sufficient to overcome the deficit claimed.

■ In addition, the pertinent statute indicates that the loss to be considered by the Commission is confined to the loss arising from the lack of revenue "on any line of railroad or branch thereof in this State" when "such passenger service *  *  * has been and is being carried on at a loss". The phrase "such passenger service" refers to the service "on any line *  *  * or branch thereof in this State". This is a narrow construction of the statute, but it so reads. The harshness of such an interpretation is suggested in one of the briefs for appellants. In view of the peculiar language of the statute, many of the authorities cited by both parties are not applicable.

■ For these reasons, there is no merit in appellants' contention that appellee by obtaining the freight rate increase is estopped from prosecuting its application for discontinuance of the trains.

It is insisted that the loss sustained by appellee was due to a lack of good faith effort on its part to avoid it. The protestants sought to show that the schedules were inconveniently timed; the station and terminal facilities were uncomfortable and unattractive; convenient ticket offices were not maintained; train equipment was old, inadequate, uncomfortable, and frequently dirty; and there was a lack of promotional effort to increase passenger traffic. Other witnesses for the protestants indicated that they would be satisfied with the service as furnished if it could be continued. The evidence shows that appellee had sought to arrange the schedules to suit the convenience of its customers; the continued losses did not justify improvement of the passenger station or terminal facilities, or the maintenance of more convenient ticket offices; and the train equipment had been renovated, air-conditioned, and kept clean. It was adequate for the traffic available. In answer to the claim that the use of a more modern train would cut the loss, appellee introduced proof to the effect that the operation of a modern streamliner type train, with diner and observation car, had failed to produce such a result. This train was operated for two years and eight months, ending December 4, 1949, without successfully stimulating passenger traffic to a profitable return.

The Commission determined that "it further appears applicant has shown a lack of good faith effort to encourage use of its passenger service and avoid such loss". The circuit court held that the finding of the Commission in this respect was not supported by the evidence. We are of the opinion that KRS 276.480 contemplates a good faith effort on the part of the applicant to avoid losses from operation of its passenger train. Any other construction of the statute would impute an intent and purpose to the Legislature to disregard the public interest, which is not warranted. Gardner v. Commerce Commission, 400 Ill. 123, 79 N.E.2d 71; Southern Pac. Co. v. Public Utilities Com., 41 Cal.2d 354, 260 P.2d 70. The evidence was insufficient to show that a lack of good faith caused or contributed to bring about the losses.

Once it is determined that the service is being carried on at a loss, the Commission is authorized to discontinue the operation under either of two situations: (1) there is no reasonable probability that such condition will change for the better; or (2) the service has become unnecessary in the public interest. KRS 276.480. The lower court found that there was no reasonable probability of a change for the better in the conditions causing the loss. The Commission made no finding on this issue. The testimony showed a loss from the operation of the two trains covering the period from June 1, 1953, through the year 1955. This loss appears to have been caused by a continuance of the conditions which brought about the loss during 1949 through 1952 on the companion trains which were discontinued in 1954. Railroad Commission of Ky. v. Illinois Cent. R. Co., Ky., 265 S.W.2d 797. It was held in that case that there was no evidence to support a conclusion that conditions would improve; nor is there any such evidence in the present case. The finding of the lower court was justified.

Much testimony was introduced concerning the need for the continuance of the two trains in the public interest. Such evidence would have been pertinent in rebuttal had the applicant based its case upon a showing that it was operating at a loss and that the service had become unnecessary in the public interest. The case of the applicant was based upon a showing of loss, coupled with reasonable probability of no change for the better. Thus, the proof as to public need and convenience was immaterial. KRS 276.480.

No merit is found in the contention that the title of the Act under which appellant has proceeded is invalid.

Much public interest, especially in the cities and communities served by this line of the railroad, has been shown in this mat-

ter. Inconvenience from the discontinuance of the trains will result to a segment of the traveling public. In view of the language of the statute, no decision other than that of the lower court is warranted. Relief from the statute may be sought by legislative action, but this Court is not justified in arriving at any other conclusion.

The passing of the iron monster is only a single step in the onward march of progress in transportation. This generation has witnessed the passing of the horse and buggy, the river steamboat, and the local passenger train. It has seen the arrival of the automobile and airplane. It looks to the promise of a future with atomic-powered vehicles and other means of travel not yet envisioned. All of these are but cogs on the wheel of progress. All serve as reminders that progress is constant and time is ever passing.

In the future, we shall call upon our memories to picture to grandchildren the thrill of the giant of the rails, with streaming smoke and screaming whistle. Alas! The steel steed stands silenced. An era has passed.

Judgment affirmed.

STEWART, J., not sitting.