**COMMONWEALTH of Kentucky ex rel. KENTUCKY RAILROAD COMMISSION et al., Appellants,**

v.

**RAILWAY EXPRESS AGENCY, Appellee.**

Court of Appeals of Kentucky.

Feb. 19, 1965.

John ·B. Breckinridge, Atty. Gen., H. N. McTyeire, Asst. Atty. Gen., Frankfort, for appellants.

Lively M. Wilson, Louisville, Stites, Peabody & Helm, Louisville, of counsel, for appellee.

HILL, Judge.

This is an appeal from the judgment of the Franklin Circuit Court setting aside an order of the Kentucky Railroad Commission directing the Express Agency to continue the operation of its Morganfield, Kentucky, express office.

This opinion will refer to the appellants as the Commission; to the appellee as the Agency.

The Agency gave proper notice of its proposed intention to consolidate its Morganfield office with ·its Evansville-Henderson office. No written protest was filed thereto. Notwithstanding the absence of protest, the Commission proceeded to hold hearings on the proposal, and thereafter entered an order denying the application to consolidate. The Agency gave notice of its intention not to comply with the order, and the Commission filed this action under KRS 276.370, to enforce compliance with its order.

The circuit court found the order of the Commission was not "supported by substantial evidence" and dismissed the appeal.

For a reversal of the judgment, the Commission presents the following arguments:

"A. The Commission found that consolidation would adversely affect the service.

"B. The Commission found that the applicant had not established a loss on its operation in Morganfield, Kentucky.

"C. The circuit court should not substitute its judgment for that of the Railroad Commission."

Before taking up these arguments in the order listed, let us take a look at the scope of the power of this court to review the order of the Commission. In Railroad Commission of Kentucky v. Illinois Central Railroad Company, Ky., 265 S.W.2d 797, apparently the bellwether definition of the power of this Court in such case, the Court said:

"It follows that our review in this case is limited to the narrow question whether there is any substantial evidence, or, as said in some of the cases, any evidence of substance, to support the finding of the Railroad Commission."

Before getting into the evidence to determine whether it "substantially" supports the finding of the Commission, we review the overall picture of the situation. Morganfield, county seat of Union County, is a city with five thousand population, located on U. S. Highway 60 and U. S. 641, twenty-three miles southwest of Henderson, Ken-

tucky. It is located on a branch line of the Illinois Central Railroad Company. Previous to the proposed consolidation, the Illinois Central motor truck picked up express at Evansville and delivered it to the office of the Agency in Morganfield. Outgoing express was loaded onto the I. C. truck at the office in Morganfield and hauled to Evansville to be forwarded.

Under the proposed consolidation, the Agency would eliminate the I. C. truck arrangement, pick up express at Evansville, consigned to Morganfield, and deliver it into Morganfield over a somewhat scheduled route as to time and direction. This same truck would have a pickup system as it proceeded on its rounds and, in addition, it would have definite and central points where it could call for and pick up express shipments. After consolidation there would be an area about the fringes of the city, including some villages nearby where the Agency would not have a pickup and delivery system. For this area, the Agency proposes to notify the consignee of the arrival of his express, await word from him, as to the day it should send the shipment out on its truck, so the consignee could meet the truck and receive his shipment.

Now, to the evidence of the protestants, upon which the Commission made its findings. Ferro Craft Corporation, the Agency's best customer, accounts for ninety-five percent of the outgoing express shipments and seventy percent of its incoming business. Its representative testified as follows:

"Principally the reason that I give for opposing this new system is the fact of convenience of picking up the telephone and calling the local express agent. * * * There are times, because of limited space at the plant, that production items have to be moved out right now and the local truck here at your agency will come over and pick up a load and deliver it to his warehouse here in Morganfield. Many times that has occurred. We pick up the phone and call him and he will immediately

dispose of it, whereas if we wait on a truck there is times that it might be sitting outdoors."

Sidney Hulett, another protestant, testified relative to the reduced rates under the consolidation. He said:

"I don't feel like the Railway Express Agency has waited long enough to see what this incentive rate will do. * * * Fortunately we have a good man here, Mr. Hubbard, if he gets something and he thinks you need it and you have said something to him about it he will call you up and he will get it to you or you can go get it. All of that we will not have."

Mike Waller, Jr., the third and next to last protestant, testified substantially as follows:

" * * * we no longer will have a local representative here * * * to come around and acquaint me with various advantages that have resulted from incentive rates. * * * All things being equal, I am more included (inclined) to do business with an organization that maintains local offices and as I regard as being a part of the community."

Mayor Lowell Truitt concluded the evidence offered in opposition to the proposed consolidation. This is what he says:

"I think that I would be derelict in my duty as Mayor of the City of Morganfield if I didn't protest any move that would, I believe, conscientiously hurt the people of Morganfield in our trade area. * * * there should be some office here where people could come and ship out their express and receive it * * * shipment facilities that we should try to increase them and try to keep the office here and keep the clerk here if possible."

In order to minimize the prolixity of this opinion, the evidence offered before the Commission will be summarized. It shows the Agency has an agreement with one

hundred seventy-eight railroads in the United States; that the Agency has been losing millions of dollars annually; that before we built our highways, the Agency had offices at nearly every railroad stop; that it now has one hundred fifty-six offices in Kentucky. The Agency has keen competition from the United States Postal Department, and numerous motor trucks. It has eight hundred offices in the State of Illinois, whereas one of the largest motor freight companies in that state only maintains seven offices. The evidence also shows the Agency will save about thirty-five hundred dollars annually by the consolidation. It has succcessfully consolidated the offices at Cynthiana and Paris with that at Lexington. It is also shown that there would be a saving to the patrons on all air shipments into the area. The pickup and delivery area would be enlarged; the Agency would save half of the time handling shipments; it would pay for collect calls to Evansville in connection with shipments. Under the old system, the I. C. trucks were not heated. They would be heated and ventilated under the consolidation. The business of the office before consolidation required only three hours of the local agent's time, yet, the Agency was required to pay him for full time.

At present two highway motor freights serve the city in competition with the Agency. Neither has an office there.

The contention that consolidation would "adversely affect the service" is without substantial foundation. The most that can be said of the evidence offered by protestants is that it indicates a desire on the part of a few patrons that the new rates be given an opportunity to determine whether they will improve the business of the Agency; a sentimental opposition to discontinuing a job; and a contention that the closing of the express office would result in inconvenience in delivering outgoing express to that office at any time of day the shipper desires, thereby giving the shipper somewhat of a storage place. This last

contention is the only one with any semblance of merit. However, considered with the other evidence, it cannot be said it is of such a substantial nature as to support the findings of the Commission.

The next contention, that the Agency did not establish a loss on its operations in Morganfield, is likewise unjustified by the evidence. With literally thousands of offices, home offices and overall charges, it would not be feasible to prove the financial results of a single operation. According to the testimony, it was estimated by at least one right well-qualified witness, that the Agency would lose approximately $3500.00 annually if not permitted to consolidate or, to be more exact, the consolidation would result in such a savings.

■ The Railway Express Agency, although regulated by an agency of State Government for the public welfare, is still a private corporation with real stockholders and real people to operate it. It is faced with keen competition from every side. It has a right to cut costs, meet competition, and show a profit. Indeed, that is its duty. It should not be prevented from so doing unless it is clearly established the public will suffer substantial loss or inconvenience.

See Commonwealth ex rel. Kentucky R. R. Commission v. Illinois Central Railway Company, Ky., 358 S.W.2d 533; Railway Express Agency, Inc. v. Louisiana Public Service Commission, 243 La. 518, 145 So.2d 18.

■ The Commission finally contends "the circuit court should not substitute its judgment for that of the Railroad Commission." It cites Kentucky State Fair Board v. Nicklies, Ky., 361 S.W.2d 289 (1962). As we noted earlier in this opinion, this is not the test. The Nicklies case involved an appeal from the action of the Board of Claims denying claims for injuries. The circuit court was limited to remanding the case for further proceedings. The Nicklies case is not in point.

We conclude the order of the Commission is not supported by substantial evidence. The judgment is affirmed.

STEWART and PALMORE, JJ., dissent on the ground that it appears to them that there was substantial evidence to support the findings of the Kentucky Railroad Commission.