BEVINS COAL COMPANY, Appellant,

v.

Esta J. RAMEY, Widow and Administratrix of Estate of Hubert H. Ramey; Roger D. Riggs, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 96–SC–537–WC.

Supreme Court of Kentucky.

June 19, 1997.

Paul E. Jones, Baird & Baird, Pikeville, for Appellant.

Kelsey E. Friend, Robert J. Greene, Pikeville, for Appellees.

## OPINION

GRAVES, Justice.

This is a review of a decision of the Court of Appeals holding that Esta Ramey (Esta) is due some payment for her in-home attendant care of her husband, Hubert Ramey (Hubert), a double amputee, because such care qualified as compensable medical and nursing benefits under KRS 342.020. We note that Hubert is deceased and this action has been revived in Esta's name. After hearing oral arguments and reviewing the record, we affirm the Court of Appeals and remand the case to the administrative law judge (ALJ) for specific findings of fact consistent with this opinion.

KRS 342.020(1), Medical treatment at expense of employer, provides in pertinent part, as follows:

> [T]he employer shall pay for the cure and relief from the effects of an injury ... the medical, surgical, and hospital treatment, including nursing, medical, and surgical supplies and appliances, as may reasonably be required at the time of the injury and thereafter during disability, . . . .

KRS 342.0011(15) provides:

> "Medical services" means medical, surgical, dental, hospital, nursing, and medical rehabilitation services, medicines, and fittings for artificial or prosthetic devices.

It is clear that KRS 342.020(1) places responsibility on the employer for payment of medical and nursing services that promote cure and relief from the effects of a work-related injury. "Cure" as defined in Webster's New World Dictionary (1980 revised edition) is: 1. a healing or being healed; restoration to health or sound condition; 2. a medicine or treatment for restoring health; remedy; 3. a system, method or course of treating a disease, ailment, etc. "Relief" is defined as: 1. an easing, of a pain, discomfort, or anxiety. In no manner does the statute qualify or limit the identity of the provider of medical and nursing services. Neither does it require that the provider have any designated credentials. Thus, the language of KRS 342.020(1) does not preclude or disqualify a homemaker spouse from providing the medical and nursing services. All that is required is that the services be for cure and relief of the effects of injury. *See National Pizza Company v. Curry,* Ky.App., 802 S.W.2d 949 (1991).

The goal of all cure and relief following a traumatic industrial amputation is, to the fullest extent possible, to relieve the symptoms, to restore function, and to return the amputee to the family, job, and society in the same condition that existed prior to the injury. A double amputation resulting from trauma is a devastating event in one's life. Cure and relief for a double amputee requires the collaborative efforts of many in the health care industry such as the nurse, the physical therapist, the occupational therapist, the social worker, the limb maker, and the vocational counselor. The presence of a caring, supportive, and attentive spouse of many years may provide emotional and psychological support.

On May 17, 1984, in the course of his employment with Bevins Coal Company (Bevins) Hubert survived a work-related traumatic injury which resulted in the partial amputation of both lower extremities. He lost his left leg above the knee and his right leg below the knee. As a double amputee he faced several problems. In addition to the surgical shock from the loss of two limbs, there was the resulting emotional shock due to the loss of body image. Even though he was fitted with prostheses, he never made a successful adjustment to his prior lifestyle. He encountered marked instability in standing and bearing weight due to the differences in the lengths of his artificial legs. Since the artificial legs did not provide mobility and balance, it was necessary for him to use a wheelchair for ambulation. The work-related injury and subsequent loss of both lower extremities rendered Hubert not only totally disabled, but also severely physically handicapped and wholly dependent on others for assistance in caring for his injuries and providing for the most basic and personal of human needs.

Esta filed a claim for compensation for nursing services provided from July 3, 1984 to June 8, 1989 in the amount of $87,000.00, representing twelve hours a day at the rate of $4.00 an hour. Esta asserts that the services provided included administering medications, massages, applying heat to Hubert's hips, preparing his meals, and assisting him in personal needs such as dressing and other duties typically performed by a nurse.

Five witnesses testified in support of Esta's claim: Hubert and Esta; Dr. J.P. Sutherland, Jr., the treating physician; Sharon Hall, administrator of Mountain View Health Care Center in Elkhorn City; and Ann Marks, president of Bluegrass Rehabilitation Programs. Bevins produced no witnesses.

Hubert testified that he could walk with his artificial legs but also had to use a walker in order to keep from falling. When he walked outside, he required his wife to be behind him to catch him in case he should fall. It was necessary for Esta to assist him in securing items which were beyond his reach. Hubert was unable to drive and required assistance in getting into a car. When Hubert's legs were healing, Esta changed the bandages even though he had a visiting nurse at the time. This was often necessary because the nurse was not present when this medical necessity arose. Hubert testified that he was able to feed and dress himself, but required physical assistance in getting in and out of the bathtub until December 1989, when a hydraulic device was installed for entering and exiting a bathtub. Hubert was unable to cook, to clean the house, or to wash clothes. However, he admitted that he did not do any of those chores prior to the injury when he was physically able to undertake them.

Esta testified that after Hubert's injury, she was required to leave her job at Pikeville National Bank to care for him. When Hubert was undergoing rehabilitation, she was taught how to work on his legs so that she could continue the rehabilitation when he returned home. In the home, Esta changed the dressings on his legs until the healing was completed. She also helped him append his artificial legs. She stated that she believed her services were necessary because Hubert would have had a very difficult time caring for himself. Hubert was easily frightened when something went wrong, lacked good balance, and had fallen on occasion. Esta admitted that Hubert did not need her every minute of the day, but did require her assistance when his legs bothered him and when he was in pain. There were times when Esta or another able-bodied person was indispensable. It was necessary for someone to be available or on call.

Dr. Sutherland testified that following the amputation of both legs, Hubert became depressed and developed traumatic arthritis in both hip joints and in the lower back. He opined that Hubert was physically unable to move from his wheelchair to a chair, or elsewhere, without assistance from another person. He stated that Hubert needed a nurse's aide 24 hours a day for emergencies and assistance with hygiene. Dr. Sutherland wrote in a letter, "Because of the patient's still unstable nature of walking with his prosthesis, the patient needs supervision in the

form of both a physical therapist or attendant because of the fact that any fall at this point could result in a fractured hip or dislocation or other severe physical injury." He testified that he instructed Esta to massage and apply heat to Hubert's hips. He concluded that Hubert did not have the physical ability to care for himself and that the services which Esta had been performing were reasonable and necessary. Dr. Sutherland estimated that compensation at the rate of $4.00 an hour for her work as basically a skilled aide was reasonable. Dr. Sutherland described Esta's care of Hubert as providing meals, staying at home to provide safety, personal hygiene, and soft tissue massages of the back.

Sharon Hall opined that Hubert required intermediate nursing care, which consisted of administering medicine, assisting with daily activities such as feeding and bathing, transportation, and security from hazards. She stated that a nurse's aide performing such a job would receive a beginning wage of $3.65 an hour.

Ann Marks reviewed Hall's deposition and opined that Hubert required companion care, consisting of assisting him in activities or transportation or putting on his prosthetic device, for about two hours a day. She testified that Esta's companion care should be compensated at a rate of between $3.50 and $4.00 an hour.

The ALJ denied any compensation to Esta, finding:

> For one to define the services of a wife who is unskilled as a nurse, therapist, physician, medical technician or even an orderly would be an absurd interpretation of this statute leading to uncontrollable and truly outrageous proportions. Such would be the equivalent to allowing a consortium claim within the context of statutory workers' compensation law. This has not been permitted by the legislature within the confines of KRS Chapter 342.

> Further, even if the wife of the claimant were to be considered a provider under the statute, Mr. Ramey's own testimony would reflect that, though he is a double amputee, he can essentially care for himself. He is not trained to perform any

skilled work and thus cannot return to work, but he manages most daily activities on his own. Evidence from Dr. Sutherland, Mr. [sic] Hall and Mr. [sic] Marks would support the conclusion that Ms. Ramey provides the claimant with services of a 'companion' which requires virtually no technical or professional skills or training. According to Mr. Ramey's testimony these services are little more than that which Ms. Ramey provided before his unfortunate injury. She provides him with the devotion either spouse might expect of the other upon taking the marital vows. *Foxworthy v. Adams*, 136 Ky. 403, 124 S.W. 381 (1910).

While the Board did not endorse the ALJ's acerbic reference to Esta's care being little more than that which her marital vows required, it nonetheless affirmed the ALJ's conclusion of noncompensability. The Board agreed that the record contained substantial evidence to support the ALJ's conclusion that Esta's services did not qualify as medical services or treatment according to KRS 342.020. Again, we note that the statute does not prescribe skilled services and does not preclude supportive services.

Apparently, the ALJ did not recognize that today there is a trend toward home care in instances where the use of sophisticated medical facilities and specialized medical personnel is unnecessary and would be an overutilization of resources. Esta's performing simple but necessary nursing tasks and assistance with everyday activities made it possible for Hubert to live at home rather than in a medical facility. The home was likely the most comfortable and least expensive place for cure and relief.

■ On appeal, the Court of Appeals reversed the decision of the Board and the ALJ. The concurring opinion of the Court characterized the reasoning of the ALJ and of the Board in denying compensation to Esta as being "so flawed as to be a total reduction to absurdity and amounting to a blatant parody of justice which requires serious and complete reconsideration." We agree. When Hubert was at home and needed bandages changed, he could have called an

ambulance to transport him to and from the doctor's office for this service. Such would clearly be compensable under KRS 342.020. Esta should not be disqualified from compensation for performing a comparable and necessary beneficial service.

■■■ Administering medication, massages, heat applications, preparing meals, and assisting in personal needs, such as dressing, certainly pertain to the cure and relief of the effects of the loss of both legs due to simultaneous amputation. Therefore, it logically follows that in-home attendant or nursing services performed by an injured worker's spouse (or other nonprofessional relative or friend) are compensable if the services are reasonable and necessary for the cure and/or relief from the effects of a work-related injury. What is required is that the services be medically necessary, performed competently, and provide cure and relief from the effects of the injury.

Based upon the unambiguous language of 342.020 and the evidence presented, we find the conclusions of the ALJ to be clearly erroneous. Based on Dr. Sutherland's uncontroverted testimony, we conclude that Esta was performing necessary adjunct medical services, including nursing and attendant care, in accordance with Dr. Sutherland's instructions and directions. She served not only as a spouse but also as an aide to the physician when she changed bandages, and applied massages and heat to the residual stumps from a double amputation. While Esta may have dutifully served as a companion, cook, and housekeeper prior to the injury when Hubert was able to perform these tasks without assistance, that is immaterial to the issue before us. After the injury Hubert was rendered disabled, and he required assistance in performing the most basic and personal aspects of human hygiene and sustenance. Hence the limitation on his ability to care for himself rendered at least some of the services provided by Esta a matter of necessity.

We order that this matter be remanded to the ALJ to review the evidence in its entirety and to make findings of fact determining the amount of medical and nursing services provided by Esta. Therefore, as a matter of law, we find that at the very least, Esta should be compensated for the time during which she changed Hubert's dressings and applied heat and massages. Moreover, the ALJ should seriously reconsider the depositions of Dr. Sutherland and Ms. Hall to the effect that some of Esta's other services are also compensable, especially if they accelerated, facilitated, or enhanced the cure and relief from the effects of the work-related injury. If any doubt remains, we expressly reject the view of the ALJ that only one with medical training may qualify under the statute.

For the foregoing reasons, the decision of the Court of Appeals is hereby affirmed. The case is remanded to the ALJ with instructions to quantify and set a market value for Esta's medical and nursing services and enter an award which is consistent with these findings.

GRAVES, LAMBERT, STUMBO and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents in a separate opinion in which STEPHENS, C.J., and JOHNSTONE, J., join.

COOPER, Justice, dissenting.

Respectfully, I must dissent.

The Worker's Compensation Act has the beneficent purpose of compensating injured workers for employment-related injuries without regard to fault. However, it is not a general accident insurance policy and does not purport to compensate for all damages sustained as a result of the injury. *Tyler–Couch Construction Co. v. Elmore*, Ky., 264 S.W.2d 56 (1954); *National Distillers Products Corp. v. Jones*, 309 Ky. 394, 217 S.W.2d 813 (1948); *Mary Helen Coal Corp. v. Dusina*, 308 Ky. 658, 215 S.W.2d 563 (1948). It is a purely statutory remedy and recovery of benefits can only be had in accordance with its statutory provisions. 99 C.J.S., *Workmen's Compensation* § 6.

In this case, Hubert Ramey, a totally disabled employee, now deceased, asserted a claim for $87,000.00 for services rendered for him by his wife during his disability. This sum represents $4.00 per hour, twelve hours

per day, seven days per week, for four years. Presumably, if this claim is granted, there will be a supplemental claim for services rendered thereafter until the date of Mr. Ramey's death.

Except for changing bandages, which was required for approximately two months following Mr. Ramey's release from the hospital, the services for which his wife seeks compensation consisted of cooking meals, cleaning house, helping her husband in and out of the bathtub (although he testified he needed little help), and accompanying him when he walked with his prostheses to insure that he would not fall (although he testified that he used a walker to protect himself from that eventuality). The wife is untrained as a nurse, although she did watch the nurses at the hospital to learn how to change her husband's bandages. Mr. Ramey's treating physician described the services rendered by his wife as "companion care."

KRS 342.020(1) provides in pertinent part as follows:

> [T]he employer shall pay for the cure and relief from the effects of an injury ... the medical, surgical, and hospital treatment, including nursing, medical, and surgical supplies and appliances, as may reasonably be required at the time of the injury and thereafter during disability....

Thus, the initial, and in my view only, issue we need to decide is whether the type of services provided to Mr. Ramey by his wife falls within the category of "medical, surgical, and hospital treatment."

In the only other context in which this issue has arisen, we held that chiropractic treatment did not constitute "medical treatment" within the contemplation of KRS 342.020(1), thus was not compensable. *Neagle v. State Highway Department*, Ky., 371 S.W.2d 630 (1963). Fifteen years later, the legislature enacted a statute permitting recovery for services rendered by a licensed chiropractor. 1978 Ky.Acts ch. 165, § 1; 1978 Ky.Acts ch. 282, § 20. This enactment was not passed as an amendment to the medical treatment statute, KRS 342.020, but as a separate statute, KRS 342.019, dealing only with chiropractic services. Subsequently, we held that chiropractic services rendered after the statute's effective date were recoverable. *Moss v. Holloway Construction Co.*, Ky., 644 S.W.2d 331 (1982). In doing so, we noted that the enactment of KRS 342.019 "overcame the provisions of KRS 342.020, which limited payment to medical treatment as defined by statute." *Id.* at 332. Thus, although the General Assembly chose to compensate for chiropractic services, neither the legislature nor this Court has recognized such services to constitute "medical treatment."

If services provided by a licensed chiropractor do not qualify as the type of compensable "medical treatment" contemplated by KRS 342.020, then "companion care" provided by an unlicensed and untrained spouse surely cannot qualify as such. This conclusion is in accord with the great weight of authority. *See generally,* 99 C.J.S. *Workmen's Compensation* § 268.

Also of relevance here is KRS 342.0011(15), which defines "medical services" to mean "medical, surgical, dental, hospital, nursing, and medical rehabilitation services, medicines, and fittings for artificial or prosthetic devices." Although there is no statutory definition of "medical treatment," the terms "medical treatment" and "medical services" appear to be interchangeable within the nine subsections of KRS 342.020. This definition clearly contemplates that medical services are those rendered by a trained professional. While the services rendered to Hubert Ramey by his wife no doubt provided him with comfort and relief, such does not constitute compensable "medical treatment" within the contemplation of KRS 342.020(1). Thus, as with respect to payments for chiropractic services, if payments for the type of home care services claimed in this case are to be made compensable, such must be accomplished by legislative enactment, not judicial fiat.

Therefore, I would reverse the Court of Appeals and reinstate the decision of the Administrative Law Judge.

STEPHENS, C.J., and JOHNSTONE, J., join this dissent.